**BUSTOP SHELTERS OF LOUISVILLE, INC.,**
Plaintiff–Appellant,

v.

**CLASSIC HOMES, INC.,**
Defendant–Appellee.

No. 89–5928.

United States Court of Appeals, Sixth Circuit.

Argued July 29, 1990.

Decided Sept. 20, 1990.

Mark J. Sandlin, Stewart E. Bland (argued), Morgan & Pottinger, Louisville, Ky., for plaintiff-appellant.

Fred M. Goldberg, David A. Brill, James S. Goldberg, Cathy S. Pike (argued), Goldberg & Simpson, David L. Gittleman, Gittleman & Barber, Louisville, Ky., for defendant-appellee.

Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Bustop Shelters of Louisville, Inc. (Bustop) appeals the District Court's refusal to confirm its proposed reorganization plan. The District Court affirmed an earlier order of the Bankruptcy Court which also denied confirmation of the plan. Both courts rejected the plan because they believed it did not qualify for confirmation under 11 U.S.C. § 1129. The courts found that Bustop had not satisfied the requirements of 11 U.S.C. § 1129(a) since one of the impaired creditors, Classic Homes, Inc.

(Classic), did not accept the plan. All other creditors approved the plan. Second, the courts did not believe that the plan was eligible for confirmation under 11 U.S.C. § 1129(b) since no bona fide class of impaired creditors had accepted the plan.

Bustop does not challenge the first conclusion, but asserts that the plan is eligible for confirmation under section 1129(b) in two ways. First, Bustop asserts that the Bankruptcy and District Courts should have approved that portion of its plan that placed Classic in a separate class from the other six unsecured creditors. If Bustop is allowed to place these creditors in a separate class, then the plan is eligible for approval under the cram-down provisions of section 1129(b) since it would meet the incorporated requirement of section 1129(a)(10) that one class of impaired claims approve the plan. Second, Bustop asserts that the Bankruptcy and District Courts erred in ruling that a third creditor class consisting of Citizens Fidelity Bank and Trust Company's (Citizens) fully secured claim was not impaired. If Citizens' claim is impaired, then the plan is eligible for approval under the cram-down provisions regardless of whether Classic is placed in the same class as the other unsecured creditors.

## I. Background

Bustop was engaged in the business of constructing and maintaining bus shelters for passengers in the Louisville, Kentucky area. The shelters contained advertising space which Bustop leased as part of its contract to build and maintain the shelters. In order to fulfill its obligations, Bustop entered into several contracts with Classic which provided that Classic would install four hundred bus stop shelters from kits provided by Bustop, would periodically perform maintenance on all of Bustop's shelters, and would clean Bustop's shelters weekly.

The relationship between Bustop and Classic broke down in July 1982. Bustop gave notice that it was canceling the contracts and filed suit in state court seeking the return of the unused materials it had

provided to Classic. Classic counter-claimed for damages from what it asserted was Bustop's breach of the contracts. Classic subsequently filed for bankruptcy and removed the case to bankruptcy court. The Bankruptcy Court determined that Bustop had breached all three contracts and awarded Classic $438,226.86 in damages. In a prior unpublished opinion of this Court, we affirmed the Bankruptcy Court's finding that Bustop had breached the contracts but found insufficient evidence to support the full amount of damages awarded. Accordingly, the case was remanded for retrial on the issue of damages. *Bustop Shelters, Inc. v. Classic Homes, Inc.*, 900 F.2d 259 (6th Cir.1990) (unpublished per curiam).

Following the award of damages by the Bankruptcy Court, but prior to this Court's disposition of the earlier case, Bustop filed voluntary Chapter 11 proceedings. By doing so, Bustop was able to invoke the Bankruptcy Code's automatic stay provisions, which enabled it to stay enforcement of Classic's judgment without posting a supersedeas bond as had been required by the Bankruptcy Court. The automatic stay was eventually lifted as to all creditors and Classic attached Bustop's debtor-in-possession account and the rents due Bustop for advertising.[1] Additionally, Bustop alleges that Classic obtained several pre-petition transfers of property that are avoidable under 11 U.S.C. § 547. All of these transfers are the subject of separate adversarial proceedings between Bustop and Classic.

Bustop filed its plan of reorganization in January 1988.[2] The plan established a number of classes, three of which are relevant to the issues raised by this appeal. Class B consisted of the single secured claim of Citizens arising from a loan it made to Bustop for the purchase of a 1985 Dodge pickup truck. The plan asserted that the class was impaired and provided that Citizens' note and security agreement would be assumed by Creative Displays, Inc.[3] Class C–2 included all unsecured claims between $201 and $20,000. This class was composed of six claims which were to be paid on a pro rata basis depending on the allowed amount of the claim. It was properly listed as impaired. Class C–3 was the single unsecured claim of Classic. Classic's claim was also impaired and was to be paid on a pro rata basis with the class C–2 claims. However, subject to the outcome of Bustop's appeal, payments to Classic were to be escrowed in an interest bearing account.

In the balloting following the filing of the plan, all of the creditors listed as impaired except Classic voted for acceptance. Since Classic rejected the plan, the plan was not eligible for acceptance under 11 U.S.C. § 1129(a). Accordingly, the Bankruptcy Court held a hearing to determine whether the plan could be approved under 11 U.S.C. § 1129(b).

The Bankruptcy Court found that the plan could not be confirmed under section 1129(b) since it did not comply with the provisions of 11 U.S.C. §§ 1129(a)(1) and 1129(a)(10). These sections, which are incorporated by reference into section 1129(b)(1),[4] require respectively that a plan comply with the applicable provisions of the Bankruptcy Code and that the plan be approved by at least one class of impaired creditors. On its face, the plan appears to have the approval of two impaired classes, Class B and Class C–2. The Bankruptcy Court determined that Citizens' claims (Class B) were not impaired within the meaning of 11 U.S.C. § 1124 since Citizens' rights to proceed against Bustop for the full amount of its loan was not altered. The plan merely provided that the truck

---

**1.** The District Court affirmed the lifting of the stay on August 19, 1988.

**2.** The plan was later amended to provide for the sale of the shelters to the Transit Authority of River City. The original plan provided that the shelters would be leased to a new company founded by Bustop's shareholders.

**3.** Apparently, Creative Displays is a corporation owned by substantially the same shareholders as Bustop. It was not a party to the bankruptcy proceeding, however.

**4.** In order for a plan to be approved under § 1129(b), it must meet all of the requirements for confirmation under § 1129(a) except the requirement that all creditors approve the plan. 11 U.S.C. § 1129(b)(1).

securing the loan would be transferred to Creative Displays and that Creative Displays would assume the loan. There was no contract in the record in which Creative Displays agreed to assume the obligation and no provision extinguishing Citizens' right to look to Bustop for payment of the loan.

The Bankruptcy Court found that the plan could not be approved on the basis of Class C–2's approval because there was no justifiable basis under 11 U.S.C. § 1122 for segregating Class C–2 creditors from Classic, the sole member of Class C–3.[5] The court concluded that the only reason Bustop segregated Classic's claim into a separate class was to enable the plan to be confirmed over what Bustop correctly anticipated would be Classic's dissenting vote. Accordingly, the Bankruptcy Court refused to approve the plan because it did not comply with section 1129(a)(1) and, if modified to comply, would not comply with section 1129(a)(10). On appeal, the District Court affirmed the Bankruptcy Court's decision. The District Court concluded that Citizens' claim was not impaired and reasoned that the Bankruptcy Court had not abused its discretion in refusing to allow Bustop to place Classic in a separate class from the other unsecured creditors. This appeal followed.

## II. The Proper Classification of Classic's Claim

■ Bustop initially argues that the Bankruptcy Court's refusal to allow the plan to classify Classic in a class separate from the other unsecured creditors is a legal question that should be reviewed *de novo*. We disagree. We have noted before the difficulty of determining whether a debtor has used its power to classify claims improperly. *In re U.S. Truck Co. (Teamsters National Freight Industry Negotiating Committee v. U.S. Truck Co.),*

800 F.2d 581 (6th Cir.1986). "Unless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class." *Id.* at 586. In *U.S. Truck,* we found that the primary limit on a creditor's power to classify claims was the broad discretionary authority vested in the bankruptcy court to reject the classification scheme proposed by the debtor:

[T]he legislative history of the Code provides little assistance in determining what limits there are to segregating similar claims. Nevertheless, we do find one common theme in the prior case law that Congress incorporated into section 1122. In those pre-Code cases, the lower courts were given broad discretion to determine proper classification according to the factual circumstances of each individual case.

*Id.*

Accordingly, a bankruptcy court's decision to approve or reject the separation of claims proposed by a debtor will only be reversed if the party opposed to the court's decision can demonstrate that the court abused its discretion.

■ Bustop has presented several arguments in favor of placing Classic in a separate classification: (1) Classic is a judgment creditor whose claim remains the subject of ongoing adversarial litigation; (2) any payments Classic receives as a result of the plan must be escrowed pending the final resolution of its claims; (3) Classic obtained involuntary preferential transfers that are the subject of adversarial proceedings; and (4) Classic has attached Bustop's debtor-in-possession account and certain rental payments due Bustop.

We need not decide whether any of these arguments provide a sufficient basis for a

---

**5.** The members of Class C–2 hold claims against the estate worth $26,936.28. If Classic were to receive the full amount of the damages originally awarded to it by the Bankruptcy Court, then placing it in the same class with the C–2 claims would result in the plan being rejected by the newly created class unless Bustop were able to prove that Classic's rejection was not in good faith. *See* 11 U.S.C. § 1126(d) (a plan is accept-

ed by a class of interests "if such plan has been accepted by holders of such interests other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class"); 11 U.S.C. § 1126(e) ("the court may designate any entity whose acceptance or rejection of such plan was not in good faith").

bankruptcy court to approve the segregation of a plan. We need only decide whether the bankruptcy court abused its discretion in rejecting them as a basis for approving the proposed classification. We find that it did not.

The fact that Classic and Bustop are involved in adversarial proceedings concerning Classic's breach of contract claims and Bustop's allegations that Classic received preferential transfers does not require Classic to be placed in a separate classification. Adversarial proceedings on these subjects are a routine part of bankruptcy and do not necessarily support a conclusion that the creditor involved in the adversarial proceedings has a stake in the approval or nonapproval of the plan different from that of other creditors. Although other creditors would receive a larger settlement payment if Bustop prevailed in the adversarial proceedings, approval or nonapproval of the plan by Classic or the other creditors does not affect the outcome of the adversarial proceedings.[6]

Further, it is within the Bankruptcy Court's discretion to conclude that the necessity of escrowing of payments made to Classic under the plan pending the final resolution of its claims is not a sufficient reason to place Classic in a separate class. Essentially, this is merely a question of administrative convenience. If the Bankruptcy Court believes that escrowing could be accomplished without placing Classic in a separate class—a designation that relates primarily to voting and treatment under the cram-down provisions—then we are not in a position to reject its conclusion absent strong reasons for concluding that the court is incorrect.[7]

The attachment by Classic of certain assets of the debtor is more troublesome. If Classic is allowed to continue to attach assets and prevails in its assertion that such transfers are not preferential, then it has a strong incentive to reject the plan and continue seizing assets. If other creditors do not seize assets, Classic can essentially place itself in a superior position to other creditors.[8] Nevertheless, Classic's incentive to reject the plan appears to be no different than the incentive of other creditors since the stay was apparently lifted as to all creditors. *See* Order Modifying Stay, entered December 23, 1987. Although the question would be a close one if the stay had been lifted only as to Classic, we see no basis for classifying Classic differently where the stay has been lifted as to all creditors.

### III. Citizens' Impaired Status

■ Bustop correctly asserts that the plan could still be considered under the cram-down provisions of section 1129(b) if we find that Citizens' loan to Bustop is impaired within the meaning of section 1124. The Bankruptcy and District Courts held that Citizens' loan was not impaired because the plan, while allowing the property securing the loan to be transferred to Creative Displays, did not require Creative Displays to assume the obligation to pay the note and did not extinguish Citizens' right to proceed against Bustop to collect the loan.

We agree with Bustop that Citizens' loan would be impaired as a matter of law if Bustop's obligation to pay the loan was extinguished and a different party substituted to assume the payments. *See In re Barrington Oaks General Partnership,*

---

**6.** Bustop has not claimed nor did the Bankruptcy Court find that Classic has attempted to use its *de facto* veto power over the plan as a settlement technique in the underlying litigation. A bankruptcy court which has found that this is the case might well conclude that this was an appropriate reason to approve a plan placing the creditor in a separate class. Alternatively, the court might consider whether this was an appropriate reason to designate the entity's vote under 11 U.S.C. § 1126(e) as not in good faith. Because these issues have not been raised here or below, we need not decide them.

**7.** Although the parties have not argued the issue, the requirement of 11 U.S.C. § 1123(a)(4) that all claims or interest of the same class receive the same "treatment" does not appear to be violated by the escrowing of one class member's payments pending the outcome of disputes over the claim's validity.

**8.** We do not have before us the question of whether these actions are appropriate. The Bankruptcy Court has apparently held resolution of the motions on this matter in abeyance pending the outcome of this appeal.

15 B.R. 952, 956 (Bankr.D.Utah 1981); 5 *Collier on Bankruptcy,* paras. 1124.03[1] and [4] (15th ed. 1988). But, as the Bankruptcy and District Courts correctly found, the plan does not require Creative Displays to assume the obligation and does not extinguish Bustop's obligation to pay on the loan. It is merely "anticipated that this obligation shall be assumed by Creative Displays." [9] Unless the plan provides that Creative Displays is bound and limits Citizens' right to proceed against Bustop, then the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim ... entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). Even were the plan found to bind Creative Displays, the mere fact that Citizens gains an additional obligor on the loan does not require a finding of impairment unless the rights Citizens has vis-á-vis Bustop are in some way altered.

IV. Conclusion

Accordingly, the judgment is AFFIRMED.

9. The plan provides in full:
 Class B claims shall be treated as follows on the effective date, or such other date as the Court may order, except to the extent that the holder of a particular claim has agreed to a different treatment of such claim.

Citizens Fidelity Bank and Trust's Note and Security agreement shall be assumed by Creative Displays, Inc.