**In re NEW BRIDE MISSIONARY BAPTIST CHURCH, Debtor.**

No. 13–44962.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Signed Feb. 11, 2014.

Meredith Taunt, Strobl & Sharp, P.C., Bloomfield Hills, MI Lynn M. Brimer, Bloomfield Hills, MI, Kenneth S. Sebree, Detroit, MI, for Debtor in Possession.

**OPINION AND ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT DENY CONFIRMATION OF DEBTOR'S FIRST AMENDED PLAN (DOCKET # 112) AND DISMISS OR CONVERT THIS CASE TO CHAPTER 7**

THOMAS J. TUCKER, Bankruptcy Judge.

This Chapter 11 case is before the Court on the Debtor's first amended combined plan and disclosure statement, filed January 29, 2014 (Docket # 112, the "First Amended Plan"). The Court declines to grant preliminary approval of the Debtor's disclosure statement, because the First Amended Plan appears to be unconfirmable, for the reasons stated below. Instead, the Court will enter a show cause order, as stated below.

**A. Background**

On August 1, 2013, Debtor filed a combined plan and disclosure statement (Docket # 74, the "Plan"). Under the Plan the claims of Debtor's creditors were treated in the following four classes: Class I—arrearage claims of the executory contract holders; Class II—secured tax claims of the Wayne County Treasurer; Class III—"the general unsecured claims against the Debtor, including trade claims which total approximately $11,590.53 as of the Petition Date, and the deficiency claim of [secured creditor Evangelical Christian Credit Union ('ECCU')] . . . in the approximate amount of $447,354.95"; [1] and Class IV—the Equity Security Holders of Debtor. (Docket # 74 at 4.) Classes I–III were designated as impaired classes, entitled to vote on the Plan. On August 6, 2013, the Court entered an order granting preliminary approval of the Debtor's disclosure statement. (Docket # 75.)

On January 3, 2014, Debtor filed a ballot summary (Docket # 96) ("Verified Summary of Ballot Count"), which stated, in relevant part, that (1) "The Debtor does not believe any claimants exist holding Class I claims"; (2) the Class II "secured real property tax claim[s] of the Wayne County Treasurer . . . were satisfied by ECCU during the course of this Chapter 11 proceeding and therefore the Class II claimant is not entitled to vote"; and (3) "Debtor is organized as a Michigan non-for profit and therefore there are no members

---

**1.** ECCU's secured claim was improperly treated in a non-voting group under the Plan (Group II). Its secured claim should have been treated in a separate voting class.

of Class IV." Because the other classes were not entitled to vote on the Plan, Class III, as the only impaired/voting class under the Plan, needed to vote to accept the Plan in order for the Plan to be confirmed. *See* 11 U.S.C. § 1129(a)(10). The ballots submitted by the Class III claimants were as follows. ECCU submitted one ballot, listing a total claim amount of $974,336.92 and voting to reject the Plan. Kenneth S. Sebree, Debtor's former attorney, whose application for employment was denied, filed a ballot listing the amount of his claim as $5,600.00, and voting to reject the Plan. Clients Advisory Services Co., submitted a ballot listing its claim as $9,500.00, and voting to accept the Plan.[2]

On January 8, 2014, the Court held a hearing on confirmation of the Plan, and made the following rulings regarding the ballots submitted by Class III claimants. The Court ruled that Attorney Kenneth S. Sebree did not have an allowed claim and was not entitled to vote to accept or reject the Plan. The Court also held that although ECCU had only submitted one ballot, it had voted to reject the Plan, both in its capacity as a secured creditor treated in Group II, and in its capacity as a general unsecured creditor treated in Class III based on its deficiency claim. Based on this ruling, the Court ruled that the Plan did not meet the requirements for confirmation, because it did not satisfy 11 U.S.C. § 1129(a)(10), in that there was no impaired class of creditors that had accepted the Plan.[3] As a result, the Court entered an order denying confirmation of Debtor's Plan, but granting Debtor leave to "to file an amended combined plan and disclosure statement," no later than January 29, 2014, or in the alternative, to "file and serve a motion to dismiss this case or a motion to convert the case, and the appropriate notice." (*See* Docket # 99, the "January 8 Order" at ¶¶ 2–3.)

### B. Debtor's First Amended Plan

On January 29, 2014, Debtor filed its First Amended Plan. That plan classifies creditors' claims into five classes instead of the four classes treated in the original Plan. The extra class was created by dividing what was formerly, under the original Plan, the Class III general unsecured claims into two separate classes in the First Amended Plan: Class III consisting of the "general unsecured claims against the Debtor in the amount of Nine Thousand Five Hundred and One ($9,501.00) and no/100 Dollars or greater, including the deficiency claim of the ECCU in the approximate amount of $837,354.95" (First Amended Plan at 4);[4] and Class IV consisting of "the general Unsecured Claims against the Debtor in the amount of Nine Thousand Five Hundred ($9,500.00) and no/100 Dollars or less" (*id.*). The First Amended Plan states that the general unsecured claims in Class IV total approximately $12,417.40.

### C. The First Amended Plan appears to be unconfirmable

█ The effect, and the Debtor's obvious intent, in now dividing the general

---

**2.** The claim of Clients Advisory Service Co. was not listed in Debtor's schedules, and that creditor did not file a proof of claim, so it does not have an allowed claim, and therefore was not entitled to vote on the Plan under 11 U.S.C. § 1126(a).

**3.** Although there was one creditor that had accepted the Plan (Clients Advisory Services Co.) and one creditor that had rejected the Plan (ECCU), the amount of ECCU's claim dwarfed the amount of Clients Advisory Service's claim, and therefore resulted in Class III voting to reject the Plan.

**4.** ECCU's secured claim was again improperly treated in a non-voting group under the First Amended Plan (Group II), when it should have been treated in a separate voting class.

unsecured claims into two separate voting classes in the First Amended Plan, is to isolate the claim of ECCU, a dissenting unsecured creditor, into a class by itself (Class III), and to create a separate class consisting of all of the other general unsecured claims, and to provide that class with more favorable treatment,[5] all for the purpose of obtaining acceptance by an impaired class, thereby satisfying § 1129(a)(10).[6]

Such a classification strategy, which effectively disenfranchises a general unsecured creditor with a large enough claim that it controls the acceptance or rejection of the plan by the class, appears to be impermissible under the circumstances of this case. The Court sees no valid legal basis for separately classifying the general unsecured deficiency claim of ECCU from the claims of all of the other general unsecured creditors.

 11 U.S.C. § 1122(b) authorizes the creation of an "administrative convenience class" of general unsecured creditors that is separate from the class treating the claims of other general unsecured creditors. Section 1122(b) provides that "[a] plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount **that the court approves as reasonable and necessary for administrative convenience.**" 11 U.S.C. § 1122(b) (emphasis added). "Generally, an adminis-

trative convenience class is one where the claims are so small in amount and large in number as to make dealing with them burdensome." *In re Tucson Self–Storage, Inc.,* 166 B.R. 892, 898 (9th Cir. BAP 1994). "Treating the unsecured claims as members of the same class must be truly burdensome before a bankruptcy court should consider deviating from the general rule and classifying them separately." *In re S & W Enter.,* 37 B.R. 153, 162 (Bankr. N.D.Ill.1984).

In this case, where there are at most only seven general unsecured claims other than the claim of ECCU, Debtor cannot demonstrate that treating those seven unsecured claims in a class with ECCU is burdensome. Therefore, Debtor cannot satisfy the "reasonable and necessary for administrative convenience" requirement of § 1112(b). Borrowing the words from *S & W Enter.,* which the Court finds applicable to this case:

> To hold otherwise would be to make worthless Code provisions such as Section 1129(a)(10) and to render meaningless the placing by Congress of the terms "reasonable" and "necessary" in Section 1122(b). In short, the Debtor's creation of separate unsecured classes is a fiction born of the necessity to satisfy Section 1129(a)(10).

*S & W Enter.,* 37 B.R. at 162–63.

And the Court can find no other basis under the Bankruptcy Code for the sepa-

---

**5.** Under the First Amended Plan, Class IV claims are to be paid on the Effective Date, while the Class III claim of ECCU is to be paid over six years.

**6.** Debtor's Schedule F lists only 6 creditors, all of which have claims that are scheduled at far less than $9,500.00: Comcast Cable Company with a scheduled claim of $232.25; DTE with a scheduled claim of $3,247.47; Hastings Mutual Insurance Company with a scheduled claim of $4,093.41; Office Depot with a scheduled claim of $559.83; Waste Management with a scheduled claim of

$158.85; and Yellow Pages with a scheduled claim of $275.00, for a total of scheduled general unsecured claims of $8,566.81. And as noted above, Clients Advisory Services Co., which was not scheduled and did not file a proof of claim, submitted a ballot listing its claim as $9,500.00 (the exact uppermost amount limit of a claim that can be included in Class IV), and voting to accept the Plan. Therefore, it is clear that all of the general unsecured claims except that of ECCU are included in Class IV. In Class III, ECCU is in a class by itself.

rate classification of ECCU's claim from those of the other general unsecured creditors. In *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.)*, 800 F.2d 581 (6th Cir.1986), the court dealt with a similar situation. The *U.S. Truck* court explained:

> In this case, U.S. Truck is using its classification powers to segregate dissenting (impaired) creditors from assenting (impaired) creditors (by putting the dissenters into a class or classes by themselves) and, thus, it is assured that at least one class of impaired creditors will vote for the plan and make it eligible for cram down consideration by the court.

*U.S. Truck*, 800 F.2d at 586. The court noted that the debtor had admitted that "the purpose of separate classification was to line up the votes in favor of the plan." *Id.* at 586 n. 8. In considering whether such a classification was permissible under the Bankruptcy Code, the *U.S. Truck* court noted:

> [T]here must be some limit on a debtor's power to classify creditors in such a manner. The potential for abuse would be significant otherwise. Unless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class.

*Id.* (footnote omitted). For guidance on "what limits there are to segregating similar claims," the *U.S. Truck* looked to pre-Code cases and stated that "[i]n those pre-Code cases, the lower courts were given broad discretion to determine proper classification according to the factual circumstances of each individual case." *Id.* at 586 (citations omitted). In the *U.S. Truck* case, the court held that the lower court had properly exercised its discretion to allow the separate classification of a union's claims from the claims of other creditors and had properly granted confirmation of the plan under the cramdown provision, because the union's interests "differed substantially from those of the other impaired creditors." *Id.* at 584, 587. None of those interests, which the *U.S. Truck* court specified as justifying separate classification of the union's claims, apply here.

In *Bustop Shelters of Louisville, Inc. v. Classic Homes, Inc.*, 914 F.2d 810 (6th Cir.1990), the court reaffirmed it holding in *U.S. Truck* "that the primary limit on a [debtor's] power to classify claims [is] the broad discretionary authority vested in the bankruptcy court to reject the classification scheme proposed by the debtor." *Id.* at 813. In *Bustop*, the bankruptcy court denied confirmation of a plan after concluding "that the only reason Bustop [ (the Debtor) ] segregated Classic's claim into a separate class was to enable the plan to be confirmed over what Bustop correctly anticipated would be Classic's dissenting vote," and that the plan "did not comply with section 1129(a)(1) and, if modified to comply, would not comply with section 1129(a)(10)." *Id.* The district court affirmed that ruling. *Id.* The Sixth Circuit affirmed, based on its finding that the bankruptcy court had not abused its discretion.

### D. Conclusion

For the reasons stated above, the First Amended Plan appears to be unconfirmable. It further appears that the Debtor cannot confirm any Chapter 11 plan in this case, without the agreement to that plan by the creditor ECCU, which the Debtor obviously does not have.

### E. Order

Based on foregoing,

IT IS ORDERED that:

1. No later than **February 25, 2014,** Debtor must file a response to this Order, showing cause why the Court should not deny confirmation of the First Amended Plan (Docket # 112), based on Debtor's impermissible classification of the general unsecured deficiency claim of ECCU, and dismiss or convert this case to chapter 7.

2. The Court will hold a hearing on this show-cause order on **March 5, 2014 at 11:00 a.m.**