## In re BLOOMINGDALE PARTNERS, an Illinois limited partnership, Debtor.

### Bankruptcy No. 91 B 11678.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 15, 1994.

---

Douglas J. Lipke, Robert J. Patton, Vedder, Price, Kaufman & Kammholz, Norman B. Berger, James T. Markus, James L. Lucari, Holleb & Coff, Chicago, IL, for debtor.

Philip V. Martino, Rudnick & Wolfe, Chicago, IL, for debtor's General Partners.

Peter A. Sarasek, Leonard S. Shifflett, Todd A. Rowden, Wilson & McIlvaine, Chicago, IL, for John Hancock Mut. Life Ins. Co.

David J. Fisher, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Fleet Nat. Bank.

Joseph J. Casper, The Jeff Diver Group, Glen Ellyn, IL, for John and Jean Zarlenga.

Katy Gleason, Dept. of Justice, U.S. Trustee's Office, Chicago, IL, for U.S. trustee.

### *MEMORANDUM OPINION*

RONALD BARLIANT, Bankruptcy Judge.

### I. INTRODUCTION

The entry of this opinion marks what appears to be the final chapter in this unique

single-asset bankruptcy case. The secured creditor, John Hancock Mutual Life Insurance Company ("Hancock"), moved to strike the most recent plan of reorganization filed by Bloomingdale Partners (the "Debtor") and to dismiss the case. Hancock argues that the classification scheme in the Debtor's modified plan is improper. The Court agrees. After an examination of the language and legislative history of the Bankruptcy Code and an analysis of the many opinions addressing the issue of classification in a Chapter 11 plan, the Court adopts the "restrictive classification" standard: Taking into consideration legal and other relevant attributes, all claims that are found to be "substantially similar" must be placed in the same class. The Debtor's modified plan violates the "restrictive classification" standard because it places "substantially similar" claims in separate classes. Accordingly, the Debtor's modified plan is stricken.

Under the classification scheme formulated in the Debtor's previous plan, a tally of the ballots reveals that no impaired class has accepted the plan. Therefore, confirmation is denied. Further, since under the circumstances Hancock has demonstrated that the Debtor is unable to effectuate a plan of reorganization, the case is dismissed.

## II. BACKGROUND.[1]

The Debtor is a limited partnership organized under Illinois law. Its primary asset is an apartment building, One Bloomingdale Place, located in Bloomingdale, Illinois. This case began on May 30, 1991, when the Debtor filed its Chapter 11 petition.

The Debtor failed in its first attempt to confirm a plan of reorganization. *See*

1. The extensive background of this case is more fully set forth in the following three previously published opinions: *In re Bloomingdale Partners*, 155 B.R. 961 (Bankr.N.D.Ill.1993) ("*Bloomingdale I*"); *In re Bloomingdale Partners*, 160 B.R. 93 (Bankr.N.D.Ill.1993) ("*Bloomingdale II*"); and *In re Bloomingdale Partners*, 160 B.R. 101 (Bankr.N.D.Ill.1993) ("*Bloomingdale III*"). Consequently, only the facts germane to this opinion are recited here.

2. Unless otherwise indicated, all statutory citations refer to the Bankruptcy Code (the "Code"), 11 U.S.C. §§ 101–1330.

*Bloomingdale I*, 155 B.R. at 983–86 (concluding that the Debtor's plan was not "fair and equitable" with respect to the class consisting of Hancock's secured claim because the proposed cramdown interest rate was too low). However, the Court gave the Debtor another opportunity to propose a plan. *Id.* at 988. The Debtor subsequently filed a new plan, captioned "Third Plan of Reorganization" (the "Third Plan").

After the first confirmation hearing, creditors John and Jean Zarlenga filed a motion, pursuant to § 502(c)(1),[2] for an order allowing and assigning a value to their contingent and unliquidated claim for the purpose of voting on the Debtor's Third Plan. The Zarlengas' claim is based upon a state common law private nuisance theory; the Zarlengas assert that the noise emanating from the air-conditioning units attached to the Debtor's apartment building interfered with their interest in the quiet enjoyment of their adjoining land and that they are entitled to damages. The Debtor strenuously objected to the Zarlengas' claim. After a lengthy hearing, this Court overruled the Debtor's objection and estimated and allowed the Zarlengas' claim in the amount of $40,000. *Bloomingdale III*, 160 B.R. at 107–12.

The Third Plan classifies all unsecured claims together so that the Zarlengas' claim is in the same class, Class 5, as the other unsecured claims. Three days before the close of voting, the Debtor filed its "Modified Third Plan of Reorganization" (the "Modified Third Plan"). This plan retains the Zarlengas' claim in Class 5, but it places all of the other unsecured claims in a separate class, Class 6.[3]

3. The entire classification scheme set forth in the Modified Third Plan is as follows:

Class 1: administrative claims; unimpaired
Class 2: Hancock's secured claim; impaired
Class 3: priority claims (§§ 507(a)(2)–(6)); unimpaired
Class 4: tax claims (§ 507(a)(7)); unimpaired
Class 5: the Zarlengas' claim; unimpaired
Class 6: all other unsecured claims; impaired
Class 7: all equity interests; impaired.

Hancock and the Zarlengas voted against the Debtor's plan.[4] The two unsecured creditors in Class 6 who were entitled to vote cast their ballots in favor of the plan.[5] Consequently, if the Zarlengas' claim is classified separately from the other unsecured claims (as the Modified Third Plan provides), then that plan may be confirmed if the cramdown standards contained in § 1129(b) are met. However, if the Zarlengas' claim is classified together with the other unsecured claims (as the Third Plan provides), then the Zarlengas in effect have veto power over the plan because without their acceptance, no impaired class entitled to vote will have accepted the plan. See §§ 1126(c) (providing that a particular class accepts a plan only if at least two-thirds in amount of the claims in that class vote in favor of the plan) and 1129(a)(10) (providing that a plan may be confirmed only if at least one impaired class accepts the plan).[6]

In support of its motion to strike the Modified Third Plan and to dismiss the case, Hancock argues that the revised classification scheme established in the Modified Third Plan is improper because "the Debtor attempts to artificially classify the Law Firm Claims separately from the Zarlenga Claim for the purpose of gerrymandering an assenting impaired class of unsecured creditors in violation of [the Bankruptcy Code]." Hancock's Mot., ¶ 15.

The Court agrees with Hancock that the classification scheme set forth in the Modified Third Plan is improper, but its conclusion is not based upon an "artificial classification" nor a so-called "gerrymandering" theory. Instead, the Court applies the "restrictive classification" standard and concludes that its factual finding of "substantial similarity" between the Zarlengas' claim and the other unsecured claims compels its decision to strike the Modified Third Plan, to deny confirmation of the Third Plan, and to dismiss the case.

## III. DISCUSSION

### A. Determining the Appropriate Classification Standard

The classification standard articulated by this Court, which may be termed "restrictive

---

4. The Zarlengas cast a ballot even though their vote cannot affect the confirmation of the Modified Third Plan. The Modified Third Plan provides that the Zarlengas are to be paid $40,000, the allowed value of their claim, on the effective date of the Plan, rendering the class containing their claim unimpaired. See § 1124(3)(A) (providing that a class is unimpaired if each holder of a claim in that class is to receive the allowed amount of its claim, in cash, on the effective date of the plan). Unimpaired classes are conclusively presumed to accept the plan. § 1126(f). Accordingly, the Zarlengas' rejecting vote is immaterial with regard to the confirmation of the Modified Third Plan. Under the Third Plan, however, the Zarlengas' vote counts because their claim is classified with all of the other unsecured claims, and this class is impaired.

5. These two unsecured creditors, Holleb & Coff ($8,307.36 claim) and Katten, Muchin & Zavis ($6,490.00 claim), are law firms whose claims are based upon pre-petition work that they performed for the Debtor. All of the other unsecured claims are held by "insiders," see § 101(31)(C) (defining "insider" when the debtor is a partnership), whose votes are not considered for the purpose of plan confirmation, see § 1129(a)(10) (providing that the acceptance of a class is "determined without including any acceptance of the plan by any insider"). The "insider" issue is discussed at length in Blooming-

dale I, 155 B.R. at 966–74, and Bloomingdale II, 160 B.R. at 101.

6. This sort of conflict regarding the classification of claims in a Chapter 11 plan arises in many contested single-asset bankruptcy cases. Usually the dispute concerns the classification of the undersecured creditor's § 1111(b) deficiency claim. See, e.g., In re Boston Post Road Ltd. Partnership, 21 F.3d 477 (2d Cir.1994); In re Woodbrook Assocs., 19 F.3d 312 (7th Cir.1994); John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs., 987 F.2d 154 (3d Cir. 1993); In re Lumber Exch. Bldg. Ltd. Partnership, 968 F.2d 647 (8th Cir.1992); In re Bryson Properties, XVIII, 961 F.2d 496 (4th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); In re Greystone III Joint Venture, 995 F.2d 1274 (5th Cir.1991), cert. denied, —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992). In the instant case, however, Hancock has become oversecured through the accrual of post-petition rents, so it has no § 1111(b) deficiency claim. Bloomingdale II, 160 B.R. at 95–100. Instead, in one of this case's unique twists, unsecured tort creditors with de facto veto power (the Zarlengas) have appeared, but the secured creditor (Hancock) is raising the standard classification argument. See § 1109(b) ("A party in interest, including ... a creditor, ... may raise and may appear and be heard on any issue in a [Chapter 11] case.").

classification," admittedly cannot be found in the plain language of the Code. Instead, this Court has settled upon this standard after examining the relevant sections of the Code and their legislative history and considering the approaches taken by other courts that have faced this issue.[7]

### 1. Bankruptcy Code § 1122

"The task of resolving the dispute over the meaning of [a particular section of the Bankruptcy Code] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). This line of inquiry alone, however, does not resolve the classification issue.

The Code's primary provisions regarding classification are set forth in § 1122.[8] "Unfortunately, the Code does not expressly address the question [of classification of 'substantially similar' claims]." *Route 37,* 987 F.2d at 158.

Subsection (a) of § 1122 addresses only claims that are *not* "substantially similar"; it prohibits their placement in the same class. Subsection (a) is silent as to the classification of claims that *are* "substantially similar."

Subsection (b) merely provides that a plan may separately classify one or more unsecured claims from the other unsecured claims under certain circumstances for administrative convenience. The Code contains no provision regarding the classification of "substantially similar" claims—either authorizing or prohibiting their separate classification.

Some courts, however, have discerned a restriction on the separate classification of "substantially similar" claims in the interplay between the two subsections of § 1122. Their reasoning is that if the plan proponent possesses the discretion to classify "substantially similar" claims separately, then § 1122(b), which permits a plan proponent to carve out a separate class of *de minimus* unsecured claims for administrative convenience, is superfluous—the plan proponent could create this administrative convenience class even without § 1122(b). Since one section of the Code should not be interpreted in such a way as to render another section superfluous, the "wholly permissive" view of classification must be incorrect. *See, e.g., Greystone,* 995 F.2d at 1278 ("The broad interpretation of § 1122(a) adopted by the lower courts would render § 1122(b) superfluous, a result that is anathema to elementary principles of statutory construction.").

This logic is flawed. Subsection (b) of § 1122 is not superfluous because it expressly authorizes the joint classification of claims that are not "substantially similar," notwithstanding the general prohibition on such joint classification contained in § 1122(a), provided only that the amounts of the claims are less than a certain amount. The first words of § 1122(a) are "Except as provided in subsection (b) of this section...." Subsection (b) is explicitly an exception to the prohibition contained in subsection (a) against classifying claims that are not "substantially similar" in the same class.

Consequently, the plain language of the Code provides no express guidance concern-

---

7. This is well-traveled ground. Research reveals more than 150 published opinions that discuss the issue of the propriety of a particular Chapter 11 plan's classification scheme. However, none of these decisions imposes binding precedent on this Court. The discussion in *Woodbrook* regarding the classification of "substantially similar" claims is dictum because in that case the Seventh Circuit ultimately held that § 1111(b) deficiency claims are not "substantially similar" to general unsecured claims. *Woodbrook,* 19 F.3d at 319. Accordingly, the *Woodbrook* plan proponent was prohibited from classifying these claims together. *Id.* In other words, *Woodbrook* did not establish a standard within the Seventh Circuit concerning the classification of claims that *are* "substantially similar."

8. Section 1122 provides as follows:

> **§ 1122. Classification of claims or interests***
> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.
> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

"As a matter of vocabulary, equityholders have 'interests' rather than 'claims.'" Douglas G. Baird, The Elements of Bankruptcy 247 n. 6 (rev. ed. 1993).

ing any restrictions on the separate classification of "substantially similar" claims.

## 2. Legislative History of § 1122

Similarly, the legislative history of § 1122 does not aid the Court in determining the appropriate classification standard to apply to a Chapter 11 plan.

When Congress enacted the Bankruptcy Code in 1978, it cobbled together parts of old Bankruptcy Act Chapters X, XI, and XII to form new Bankruptcy Code Chapter 11. Specifically, Code § 1122 is derived from Act §§ 597 (Chapter X) and 751 (Chapter XI). *In re U.S. Truck Co.*, 800 F.2d 581, 585 (6th Cir.1986). According to the Notes of the Senate Committee on the Judiciary,

> This section [1122] codifies current case law surrounding the classification of claims and equity securities. It requires classification based on the nature of the claims or interests classified, and permits inclusion of claims or interests in a particular class only if the claim or interest being included is substantially similar to the other claims or interests of the class.

S.Rep. No. 989, 95th Cong., 2d Sess. 118 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5904 (reprinted in *U.S. Truck*, 800 F.2d at 585–86). Unfortunately,

> [i]t is difficult to follow Congress' instruction to apply the old case law to the new Code provision. The old case law comes from two different sources. Chapter X of the old Act was designed for thorough financial reorganizations of large corporations. It imposed a very formal and rigid structure to protect the investing public. Chapter XI was designed for small non-public businesses, did not permit the ad-

justment of a secured debt or of equity, and thus contained few investor-protection measures. The idea behind Chapter 11 of the Code was to combine the speed and flexibility of Chapter XI with some of the protection and remedial tools of Chapter X. Thus, Congress has incorporated, for purposes of interpreting section 1122, the case law from two provisions with different language, that were adopted for different purposes, and that have been interpreted to mean different things.

*U.S. Truck*, 800 F.2d at 586 (citations omitted).

Therefore, the best that can be said concerning the legislative history of § 1122 is that it "provides little assistance in determining what limits there are to segregating similar claims." *Id.; see also Boston Post Road*, 21 F.3d at 483 ("[S]everal courts have concluded that an analysis of legislative history in fact sheds little light onto the meaning of Section 1122."); *In re Jersey City Medical Ctr.*, 817 F.2d 1055, 1060 (3d Cir.1987) ("[T]he legislative history behind § 1122 is inconclusive regarding the significance (if any) of [the] omission [of language addressing the presence of similar claims in different classes]." (brackets added; parentheses in original)). *But see* Randolph J. Haines, *Greystone Becomes Tombstone*, Norton Bankr.L. Advisor, Jan. 1992, at 1, 2 [hereinafter Haines] ("[T]he language and official comment of the Bankruptcy Commission's draft made clear that similar claims must be classified together (Commission Draft § 7–302 and Note thereto), and there is no legislative history indicating any intent to adopt a different result.").[9]

---

9. Haines is referring to the Report of the Commission on the Bankruptcy Law of the United States (the "Commission's Report"), dated July, 1973. The Commission was established in 1970, pursuant to Pub.L. No. 91–354, 84 Stat. 468 (1970), "to 'study, analyze, evaluate, and recommend changes' in the Bankruptcy Act." H.R. Doc. No. 93–137, 93d Cong., 1st Sess., pt. I, at 1 (1973) (republishing *Communication from the Executive Director, Commission on the Bankruptcy Laws, transmitting a Report of the Commission on the Bankruptcy Laws*). The section of the Commission's Report to which Haines refers provides as follows:

> *Section 7–302. Classification of Claims and Interests.* If necessary for the purpose of the plan or its acceptance, on the request of any party in interest, the administrator shall designate classes of creditors and equity security holders which are of substantially similar character and the members of which enjoy substantially similar rights, consistent with the provisions of sections 4–405 and 4–406, except that the administrator may create a separate class of creditors having unsecured claims of less than $100 for reasons of administrative convenience.

> NOTE

> This section is derived from §§ 197, 357, and 452 of the present Act. However, the liquidation priorities are applicable and claims of a substantially similar nature must be included

### 3. Judicially Created Standards

Although the term "restrictive classification" may be new, the mandatory joint classification of "substantially similar" claims is not a new concept under the Bankruptcy Code. Ten years ago the First Circuit stated:

> The general rule regarding classification is that " 'all creditors of equal rank with claims against the same property should be placed in the same class.' " Separate classifications for unsecured creditors are only justified "where the legal character of their claims is such as to accord them a status different from the other unsecured creditors . . . ."

*Granada Wines, Inc. v. New England Teamsters & Trucking Indus. Pension Fund,* 748 F.2d 42, 46 (1st Cir.1984) (quoting *In re Los Angeles Land & Invs., Ltd.,* 282 F.Supp. 448, 453 (D.Haw.1968), *aff'd,* 447 F.2d 1366 (9th Cir.1971), which was quoting *Scherk v. Newton,* 152 F.2d 747, 751 (10th Cir.1945)). Indeed, it appears that most courts applied the "restrictive classification" standard (although not by that name) in the years immediately after the Code was enacted. *See* Peter E. Meltzer, *Disenfranchising the Dissenting Creditor Through Artificial Classification or Artificial Impairment,* 66 Am.Bankr.L.J. 281, 290–96 (1992) [hereinafter Meltzer] (discussing "the early cases . . . that prohibited artificial classification").

After about 1985, however, "[f]or reasons not entirely clear, . . . courts suddenly began examining the literal terms of § 1122(a) more closely, and noticing that this section does not technically prohibit artificial classification." *Id.* at 290. A convenient way to illustrate the logic supporting the "restrictive classification" standard is to examine the shortcomings of the alternate approaches to

> in the same class, except that small claims may be separately classed. Special treatment of small claims is allowed for administrative convenience, *e.g.,* to avoid processing numerous small payments during the performance of a plan; the power to so classify claims is less important under the Act in light of the changed method of determining the requisite number of acceptances under § 7–310(d)(1).
>
> H.R. Doc. No. 93–137, 93d Cong., 1st Sess., pt. II, at 241 (1973). As discussed above, however,

the classification issue taken by some courts after 1985.

### a. "Flexible Classification" Standard

■ Several courts have interpreted the absence in the Code of an explicit prohibition on the separate classification of "substantially similar" claims as an implicit authorization for such separate classification. *See, e.g., In re ZRM–Oklahoma Partnership,* 156 B.R. 67, 71 (Bankr.W.D.Okla.1993) ("Congress plainly fashioned a broad classification scheme, subject only to limitations contained elsewhere in the Code."); *In re Greystone III Joint Venture,* 102 B.R. 560, 568 (Bankr. W.D.Tex.1989) ("Section 1122 authorizes flexibility in classification in furtherance of the rehabilitative intentions of Chapter 11."), *aff'd,* 127 B.R. 138 (W.D.Tex.1990), *rev'd,* 995 F.2d 1274 (5th Cir.1991), *cert. denied,* ——— U.S. ———, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992). *See generally In re AG Consultants Grain Div., Inc.,* 77 B.R. 665, 671 n. 15 (Bankr.N.D.Ind.1987) (listing "[c]ases which seem to require a single classification for unsecured creditors") and n. 16 (listing "[c]ases which allow a more flexible approach"); Meltzer, at 290–96 (discussing "a second group of cases which held that § 1122(a) . . . does not, by its terms, require that similarly situated claims be classified together").

*ZRM* is representative of the most permissive view of "flexible classification." [10] That court employed what it denominated "The Correct Method of Statutory Interpretation," *ZRM,* 156 B.R. at 68, to conclude that a plan proponent possesses absolute flexibility to classify "substantially similar" claims together or separately, as it sees fit, subject only to "other explicit protection mechanisms in the Code which Congress agreed to in sections 1111, 1123, and 1129." *Id.* at 71.

Code § 1122 is based upon Act §§ 597 and 751, not upon this section of the Commission's Report. Accordingly, the Commission's Report is not relevant legislative history for this purpose.

**10.** It appears that the term "flexible classification" was coined by Judge Stephen D. Gerling in *In re Northeast Dairy Co-op. Fed'n, Inc.,* 73 B.R. 239, 250 (Bankr.N.D.N.Y.1987).

*AG Consultants,* another opinion adopting "flexible classification," took a slightly narrower approach by imposing some meager restrictions on a plan proponent's right to establish separate classes of "substantially similar" claims. That court granted the plan proponent the flexibility to classify "substantially similar" unsecured claims in separate classes "if [the classes as established in the plan] are in the best interest of creditors; foster reorganization efforts (ensure success); do not violate the absolute priority rule; and, do not uselessly increase the number of classes." *AG Consultants,* 77 B.R. at 674 (brackets added; parentheses in original).

Other courts and commentators have raised a fundamental objection to the application of the "flexible classification" standard: "Flexible classification" renders § 1129(a)(10),[11] the Code provision requiring the assent of at least one impaired class, a mere ministerial requirement.

Section 1129(a)(10) requires that if any class is impaired under the plan, at least one impaired class must accept the plan. As pointed out by several Circuit Courts of Appeals, § 1129(a)(10) is in direct conflict with the "flexible classification" standard. The Third Circuit stated:

Nevertheless, it seems clear that the Code was not meant to allow a debtor complete freedom to place substantially similar claims in separate classes. The critical confirmation requirements set out in Section 1129(a)(8) (acceptance by all impaired classes) and Section 1129(a)(10) (acceptance by at least one impaired class in the event of "cram down") would be seriously undermined if a debtor could gerrymander[12] classes. A debtor could then construct a classification scheme designed to secure approval by an arbitrarily designed class of impaired claims even though the overwhelming sentiment of the impaired creditors was that the proposed reorganization of the debtor would not serve any legitimate purpose. This would lead to abuse of creditors and would foster reorganizations that do not serve any broader public interest.

*Route 37,* 987 F.2d at 158 (footnote added). Seven years earlier, the Sixth Circuit declared:

[T]here must be some limit on a debtor's power to classify creditors in such a manner. The potential for abuse would be significant otherwise. Unless there is some requirement of keeping similar claims together, nothing would stand in the way of a debtor seeking out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class.

*U.S. Truck,* 800 F.2d at 586; *see also Bryson,* 961 F.2d at 502 (quoting *U.S. Truck* ); *Greystone,* 995 F.2d at 1279 (same); *In re Holywell Corp.,* 913 F.2d 873, 880 (11th Cir. 1990) (same); *Bustop Shelters of Louisville, Inc. v. Classic Homes, Inc.,* 914 F.2d 810, 813 (6th Cir.1990) (same); *Hanson v. First Bank of South Dakota,* 828 F.2d 1310, 1313 (8th Cir.1987) (same); *Jersey City Medical Center,* 817 F.2d at 1061 (same).

Moreover, in a recent decision, a district court stated:

"The policy underlying Section 1129(a)(10) is that before embarking upon the tortuous path of cramdown and compelling the target of cramdown to shoulder the risks of error necessarily associated with a forced confirmation, there must be some other properly classified group that is also hurt and nonetheless favors the plan." Allowing a debtor to manipulate the voting by creating a class that is certain to favor a plan effectively nullifies the threshold requirement that at least one impaired class accept the plan.

*In re One Times Square Assocs. Ltd. Partnership,* 165 B.R. 773, 776–77 (S.D.N.Y.1994)

---

**11.** Section 1129(a)(10) provides as follows:

**§ 1129. Confirmation of plan**
(a) The court shall confirm a plan only if all of the following requirements are met:

\* \* \* \* \* \*

(10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

\* \* \* \* \* \*

**12.** "Gerrymandering" is discussed in greater detail in part III.A.3.b.(1) below.

(quoting *In re 266 Washington Assocs.*, 141 B.R. 275, 287 (Bankr.E.D.N.Y.), *aff'd*, 147 B.R. 827 (E.D.N.Y.1992)).

■ In other words, the "flexible classification" standard is flawed because it would permit the plan proponent to carve out a separate class for one friendly creditor who the plan proponent knows will vote for the plan.[13] Permitting this action would circumvent the requirement, set forth in § 1129(a)(10), of an assenting impaired *class*, rendering it, at best, a mere ministerial requirement. Since one section of the Code should not be interpreted in such a way as to render another section superfluous, *see, e.g.*, *United States v. Nordic Village, Inc.*, — U.S. —, —, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) ("[A] statute must, if possible, be construed in such a fashion that every word has some operative effect."), the "flexible classification" standard must be rejected.

The notion that § 1129(a)(10) conflicts with the "flexible classification" standard, however, is not without its critics. *See* Jeffrey C. Krause, *The Bias of the Courts Against Single–Asset Real Estate Cases Is Creating Bad Law in the Area of Classification*, 22 Cal. Bankr.J. 47 (1994) [hereinafter Krause]. Krause advances two arguments in support of his position.

First, Krause maintains that a plan proponent has an incentive to minimize the number of impaired classes in the plan because each impaired class can reject the plan and force the plan proponent to meet the stricter cramdown requirements of § 1129(b)—the fewer the classes the less chance that cramdown will be required.

The Courts' concern that they must impose some limitation on the arbitrary proliferation of classes ignores the natural tension against creation of multiple classes which arises from the leverage available to each dissenting class. A plan proponent does not have an incentive to create "too many" classes, because every dissenting class is protected separately by Bankruptcy Code § 1129(b). Every class has the right to contend that the discrimination between it and other classes is "unfair" and to contend the plan is not "fair and equitable." Every dissenting class is entitled to protection under the absolute priority rule. ... The debtor simply has no incentive to create multiple classes, unless those classes have different economic stakes in the reorganized debtor.

*Id.* at 54–55.

Krause's first argument is inapplicable to the instant case because one impaired class, the class containing Hancock's secured claim, has voted against the plan. Regardless of the number of additional classes the plan proponent creates, the plan proponent will still have to meet the cramdown standards in order to have its plan confirmed. Indeed, this is also true in the typical contested single-asset case. The class containing the secured portion of the undersecured creditor's claim will reject the plan, forcing the plan proponent to satisfy the stricter cramdown requirements. The plan proponent, consequently, will not be motivated by the fear of cramdown to avoid a "proliferation" in the number of impaired classes. In fact, contrary to Krause's assertion, the opposite concern exists—the plan proponent has an incentive to create multiple impaired classes in order to ensure that at least one impaired class will accept the plan.

Second, Krause contends that § 1129(a)(10) is merely one of a number of provisions that must be met before a plan can be confirmed—the plan proponent should not be condemned for meeting this particular requirement through "flexible classification."

---

13. Indeed, the case at bar reflects precisely this risk. The two law firms who are the only non-insider unsecured creditors (other than the Zarlengas) are undoubtedly friendly creditors. Although this Court has previously held that the impairment of the class containing their claims is not "artificial impairment" such that their votes should not be counted, this is a different issue than whether their claims may be classified separately from the Zarlengas' claim. It is not inconsistent with the purposes of § 1129(a)(10) for the Court to consider the votes of creditors who support the plan even though their support may be based upon their non-economic relationships with the debtor, but it would be inconsistent to classify pro-debtor creditors separately from other creditors solely because of those relationships.

The burden is on the proponent of a plan to propose a plan that satisfies all the requirements of Bankruptcy Code § 1129. No court would say that it is "manipulative" or an abuse of the reorganization process for a debtor to propose a plan that pays creditors more than they would receive in a case under chapter 7 to comply with section 1129(a)(7). Nor would any court state that it is improper for a debtor to propose a plan that is not likely to be followed by liquidation, to comply with subsection (a)(11). Courts would admonish a debtor for proposing a plan that fails to satisfy any of the other provisions of section 1129(a). Why is it "manipulative" or "arbitrary" to classify claims in a manner intended to satisfy the requirements of subsection (a)(10), at least where that classification is based on differences in the economic motive of the creditors?

*Id.* at 55.

Through this argument, Krause blurs the distinction between fulfilling an explicit requirement imposed by the Code and interpreting a requirement in such a way that it becomes a nullity. As Krause points out, a Chapter 11 plan must satisfy each of the 13 paragraphs of § 1129(a) in order to be confirmed.[14] One of these paragraphs, § 1129(a)(10), requires that at least one impaired *class* must accept the plan. As discussed above, a plan proponent cannot interpret "class" to mean "a single friendly unsecured creditor." If it could, then § 1129(a)(10) poses no substantive burden on the plan proponent; instead, § 1129(a)(10) becomes a mere ministerial requirement. *See* Meltzer, at 302 ("Interpreting one Code provision (§ 1122) is such a manner so as to eradicate completely the effects of another (§ 1129(a)(10)) can hardly be considered sound reasoning."). Congress cannot have intended this result when it chose to use the word "class" in § 1129(a)(10).[15]

### b. "Gerrymandering" and "Reasonableness" Standards

The recent trend, at least among the Circuit Courts of Appeal that have faced the

---

**14.** There is one exception. Paragraph (8) of § 1129(a) requires unanimous acceptance by the impaired classes. A plan that fails to achieve such unanimous acceptance can nevertheless be confirmed if at least one impaired class accepts, *see* § 1129(a)(10), and it meets the so-called cramdown requirements of § 1129(b), *see* § 1129(b)(1).

**15.** Another commentator argues that "nothing in the legislative history of section 1129(a)(10) suggests that Congress intended that section to require the debtor to place all substantially similar claims into one class or that separate classification to create an accepting impaired class is abusive." Linda J. Rusch, *Gerrymandering the Classification Issue in Chapter Eleven Reorganizations*, 63 U.Colo.L.Rev. 163, 185 (1992) [hereinafter Rusch] (footnote omitted). In support of this position, Professor Rusch discusses Congress's various "approaches" between 1978 and 1984 to amend the original language of § 1129(a)(10). *Id.* at 186–89. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, tit. 3, § 512(a)(9), 98 Stat. 333, 387 (1984), ultimately modified § 1129(a)(10) to its present form. Rusch, at 186 n. 116.

Specifically, Professor Rusch quotes the comments of a member of Congress at length, observing that "Representative Edwards explicitly mentions the separate classification of similar claims and does not condemn that practice, but states that creditors are sufficiently protected as long as the one accepting creditor's claim is impaired." *Id.* at 189.

Professor Rusch, however, also reports three other comments to the various "approaches" that may be interpreted to indicate that the choice of the word "class" in § 1129(a)(10) was intended to place a substantive burden on the plan proponent:

1. Senator Deconcini on S. 658, "Section 107 of the Senate amendment adopts the position taken in the House amendment with the addition of several positions taken in the Senate bill most notably the provision found in 180(g) of the Senate bill that requires *one actual voting class* to accept the plan." 126 CONG. REC. 31154 (1980); 2. S.REP. NO. 150, 97th Cong. 1st Sess. 16 (1981) on S. 863,

Paragraph (10) makes clear the intent of section 1129(a)(10) that *one "real" class* of creditors must vote for the plan of reorganization. A class that is deemed to have accepted the plan because it is unimpaired or acceptance of a small class of claims permitted to be created for administrative convenience will not satisfy this requirement.

3. S.REP. NO. 65, 98th Cong. 1st Sess. 85 (1983) on S. 445, "Paragraph (10) makes clear the intent of section 1129(a)(10) that *one 'real' class* of creditors must vote for the plan of reorganization."

Rusch, at 186 n. 117 (emphasis added). The references to "one actual voting class" and "one 'real' class" strengthen the argument that "class" does not mean "a single friendly unsecured creditor."

issue of the propriety of a classification scheme in a Chapter 11 plan, is for the court to conduct an implicit two-pronged analysis. First, the court determines whether a particular claim is "substantially similar" to other claims in a different class under the plan. If not, the analysis ends; under § 1122(a), the claim is required to be classified separately from the other claims. *See Woodbrook,* 19 F.3d at 319 (following *In re SM 104 Ltd.,* 160 B.R. 202, 221 (Bankr.S.D.Fla.1993) (opinion by Robert E. Ginsberg, Bankruptcy Judge for the Northern District of Illinois, sitting by designation in the Southern District of Florida), in finding that a § 1111(b) deficiency claim is not "substantially similar" to other unsecured claims).

On the other hand, if the claim is found to be "substantially similar" to claims in another class, then the court next determines whether it is nevertheless appropriate for this claim to be classified separately.[16] In the course of this analysis, courts have employed various non-Code-based tests, including "gerrymandering," *e.g., Greystone,* 995 F.2d at 1279, and "reasonableness," *e.g., Jersey City Medical Center,* 817 F.2d at 1061.

### (1) "Gerrymandering"

"The term 'gerrymander' arose from an election district—that took the shape of a salamander—formed in Massachusetts by Governor Elbridge Gerry's[17] Jeffersonian or Democratic–Republican Party. The phrase was coined by Gerry's opponents, the Federalists." *Rogers v. Lodge,* 458 U.S. 613, 649 n.

36, 102 S.Ct. 3272, 3292 n. 36, 73 L.Ed.2d 1012 (1982) (Stevens, J., dissenting) (footnote added).

■ In the context of the classification of claims in a Chapter 11 plan of reorganization, to "gerrymander" is to create classes of claims in an artificial way with the purpose of ensuring that the plan will be confirmed. Perhaps the most influential case banning the practice of "gerrymandering" is *Greystone,* which states that "one clear rule ... emerges from otherwise muddled caselaw on § 1122 claims classification: thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Greystone,* 995 F.2d at 1279.

*Greystone'*s "one clear rule" prohibiting "gerrymandering" has been soundly criticized on two grounds. First, at least some of the authorities cited in that opinion do not support the "one clear rule":

For its "one clear rule" prohibiting gerrymandering of similar claims the [Fifth Circuit] cited three Circuit Court decisions, none of which found impermissible gerrymandering for an acceptance, and one of which *approved* it. The separate classification in *In re U.S. Truck Co.,* [800 F.2d 581 (6th Cir.1986) ], was approved on the basis that employee creditors had different interests in the debtor's survival than trade creditors, a rationale that is indistinguishable from the "gerrymandering" at issue in *Greystone. In re Holywell Corp.,*

16. This two-pronged method of analysis is revealed by the different standards of review that some appellate courts apply to bankruptcy courts' findings regarding "substantial similarity." *Compare Greystone,* 995 F.2d at 1279 n. 5 ("Whether a deficiency claim is legally similar to an unsecured trade claim turns not on fact findings but on their legal characteristics. This is an issue of law, freely reviewable on appeal. Subsidiary fact findings however, may be entitled to the deference of the clearly erroneous test." (citations omitted)) *and* 995 F.2d at 1281 n. 7 ("Two standards of appellate review apply to the debtor's classification of claims. Issues such as the similarity in priority and legal attributes and the ultimate question whether treatment in the same or separate classes is necessary, are legal issues reviewable by our court *de novo. See* n. 5 *supra.* Whether there were any good business reasons to support the debtor's separate classification of claims is a question of fact.") *with In re*

*Johnston,* 21 F.3d 323, 327 (9th Cir.1994) (citing the *Greystone* bifurcated standards of review and declaring, "In our view, this is a distinction without meaning. . . . We thus reaffirm our rule that a bankruptcy court's finding that a claim is or is not substantially similar to other claims, constitutes a finding of fact reviewable under the clearly erroneous standard." (citations omitted)).

17. Elbridge Gerry is one of the signatories of the Declaration of Independence. He also served as Vice President of the United States from 1813 to 1814 under President James Madison. Mr. Gerry's name and the word "gerrymander" are properly pronounced with a hard *"g"* sound. David G. Carlson, *The Classification Veto in Single–Asset Cases Under Bankruptcy Code Section 1129(a)(10),* 44 S.C.L.Rev. 565, 566 (1993) (citing Steve Tally, Bland Ambition 41 (1992)).

[913 F.2d 873, 880 (11th Cir.1990),] denied confirmation not because of classification per se, but because of the discriminatory treatment in subordinating a claim solely because it was held by an insider; there was no gerrymandering for an affirmative vote because the plan was a creditor's plan that had "overwhelming support of creditors." *Hanson v. First Bank of South Dakota,* [ (828 F.2d 1310 (8th Cir.1987),] involved an attempt to reclassify claims at the confirmation hearing, which was deemed too late. The cases hardly provide a "clear rule" on what constitutes inappropriate efforts to "gerrymander an affirmative vote," and the holding of *U.S. Truck* is inescapably to the contrary. Indeed, so is the Fifth Circuit's own prior decision, which it never mentioned, holding in a Chapter XII case "The fact that bankruptcy courts are courts of equity . . . allows exceptions to any strict rules of classification of claims." *In re LeBlanc,* [622 F.2d 872, 879 (5th Cir.1980) ].

Haines, at 3 (emphasis in original).

Second, and more significantly, it is difficult or impossible for a court to apply the "gerrymandering" standard in the context of a Chapter 11 classification scheme because "gerrymandering" focuses upon the plan proponent's state of mind. *See Greystone,* 995 F.2d at 1279 ("[I]f [the debtor's] proffered 'reasons' for separately classifying the [undersecured creditor's] deficiency claim simply mask the intent to gerrymander the voting process, that classification scheme should not have been approved."). "The 'one clear rule' is not easy to apply since it is not about 'classifying similar claims'; it is about the debtor's purpose." *Woodbrook,* 19 F.3d at 318; *see also In re D & W Realty Corp.,* 156 B.R. 140, 143 n. 8 (Bankr.S.D.N.Y.1993) ("[T]he concept of 'gerrymandering' is a nebulous one in part because of the difficulty of determining what is an improper purpose."), *rev'd,* 165 B.R. 127 (S.D.N.Y.1994); Haines,

at 3 ("Thus the [*Greystone* ] Court turned to an analysis of each of the three proffered reasons [for the separate classification], without indicating how it had discerned the 'intent to gerrymander.' ").

Every plan proponent creates its classification scheme with the goal of maximizing the probability that its plan will be confirmed. The characterization of a plan proponent's efforts as "gerrymandering" is pejorative and falsely conclusive. In other words, every plan proponent "gerrymanders" to some extent; an examination of the plan proponent's intent is neither helpful nor feasible. Instead, the question remains: How far may the plan proponent go in drawing its class boundaries?

#### (2) "Reasonableness"

Similarly, opinions that employ a "reasonableness" standard to a plan proponent's classification scheme are not particularly illuminating or easy to apply. *See, e.g., Jersey City Medical Center,* 817 F.2d at 1061 ("[T]he authorities recognize that the classification of claims or interests must be reasonable. . . . We immediately note the reasonableness of distinguishing the claims of physicians, medical malpractice victims, employee benefit plan participants, and trade creditors.").

This "standard" raises more questions than it answers: How is a court to determine whether a classification scheme in a Chapter 11 plan is reasonable? What aspects of a given classification scheme cause it to be reasonable or unreasonable? [18] The best way to answer these questions is to look to the Code itself.

#### c. "Restrictive Classification" Standard

As discussed at length in part III. A.1. above, the Code provides a test, "substantial similarity," to determine when a claim cannot be placed in a particular class; § 1122(a) provides that claims that are not

---

18. Indeed, as Judge Ginsberg points out in *SM 104,* many courts that purport to apply the "gerrymandering" and "reasonableness" standards actually appear to be basing their decisions on equitable grounds: "[W]hile *Greystone* and the other cases have paid lip service to principles of statutory construction and the language of § 1122, they have turned more on . notions of basic fairness and good faith." *SM 104,* 160 B.R. at 217. Of course, Judge Ginsberg did not address the propriety of a Chapter 11 plan that classifies "substantially similar" claims separately because he ultimately held that a § 1111(b) deficiency claim is not "substantially similar" to general unsecured claims. *Id.* at 218 n. 33.

"substantially similar" must be classified separately. It is logical to apply this Code-based test in a correlative manner to fill the void left by the amorphous "reasonableness" and "gerrymandering" standards. That is, the "restrictive classification" standard is not remarkably different from the "gerrymandering" and "reasonableness" standards that many courts have been applying; "restrictive classification" merely looks to the Code for a test to establish the bounds of "reasonableness." Under the "restrictive classification" standard it is reasonable for the plan proponent to classify claims separately only if these claims are not "substantially similar."

■ This Court, therefore, concludes that "restrictive classification" is the appropriate method for evaluating the classification of claims in a Chapter 11 plan. Instead of conducting a two-part analysis, the Court will determine, as a single finding of fact, whether the particular claim is "substantially similar" to the other claims in the class at issue. *Cf. Johnston,* 21 F.3d at 327 ("We are also satisfied that bankruptcy court judges must have discretionary power in classifying claims under § 1122(a).... [A] bankruptcy court's finding that a claim is or is not substantially similar to other claims, constitutes a finding of fact reviewable under the clearly erroneous standard." (citations omitted)). *But cf. Woodbrook,* 19 F.3d at 317 ("We review *de novo* the propriety of classification.").

■ If it is not "substantially similar," then, as under the two-pronged analysis, this claim must be classified separately pursuant to the plain language of § 1122(a). However, if this claim is "substantially similar" to other claims, then it must be classified together with these other claims. This analysis preserves the viability of § 1129(a)(10) without requiring an examination of a plan proponent's subjective motives.

■ The plan proponent has broad discretion in classifying claims. *See, e.g., id.* ("[The debtor] possesses considerable, but not complete, discretion to classify claims

and interests in its Chapter 11 plan of reorganization."). If the plan proponent can articulate differences among the claims—that is, if the plan proponent can demonstrate the lack of "substantial similarity"—then separate classification is proper. *Cf. Boston Post Road,* 21 F.3d at 483 (disapproving a "restrictive classification" standard, but nevertheless holding that "the [plan proponent] must adduce credible proof of a legitimate reason for separate classification of similar claims."). The differences may relate to legal rights or bankruptcy priorities, *see, e.g., In re AOV Indus., Inc.,* 792 F.2d 1140, 1150 (D.C.Cir.1986) ("[T]he focus of the classification is the legal character of the claim as it relates to the assets of the debtor."); or business reasons relevant to the success of the reorganized debtor, *see, e.g., Lumber Exchange,* 968 F.2d at 649 ("There is some authority for the proposition that a plan may classify trade creditors separately from, and treat them more generously than, other creditors if doing so is necessary to a debtor's ongoing business."); *but see Hanson,* 828 F.2d at 1313 ("Although there is some case authority for this distinction, ... the interests of trade creditors are not sufficiently 'unique' to warrant separate classification in this case." (citation omitted)).

■ As an example, it might be vital to a debtor to be able to treat customers' warranty claims differently than trade creditor claims, even though they are all general unsecured claims. In this instance, a court may reasonably find that warranty claims are not "substantially similar" to trade debt.[19] The significant aspect of the "restrictive classification" analysis is that the inquiry focuses objectively upon the claims themselves, not upon the plan proponent's subjective intent.

### B. Finding of "Substantial Similarity"

■ The Court's final task is to apply the "restrictive classification" standard to the facts of the instant case.

19. "Similarity is not a precise relationship, and the elements by which we judge similarity or resemblance shift[] from time to time in bankruptcy." *Woodbrook,* 19 F.3d at 318. It is not this Court's intention, nor is it necessary or appropriate, to define precisely the limits of "substantial similarity." "Substantial similarity" is necessarily a case-by-case determination.

The Court finds that the Zarlengas' claim is "substantially similar" to the unsecured claims in Class 6 of the Debtor's Modified Third Plan. They are all unsecured claims with the same bankruptcy priority. Although the Zarlengas' claim is based upon a state common law private nuisance theory— that is, it is a tort claim—the Zarlengas' claim has the same non-bankruptcy legal status as the contract-based claims contained in Class 6. For the purposes of this bankruptcy case, the dispute regarding the Zarlengas' claim has been resolved, and their claim is liquidated in the amount of $40,000. *Bloomingdale III*, 160 B.R. at 110–12. Outside of bankruptcy, the Zarlengas and the contract claimants may look to the partnership, then to the general partners, to satisfy their claims. None of these claims entitles its holder to receive punitive damages. Outside of bankruptcy, all of these claims share the same priority and "race to the courthouse" pressures; none is subject to equitable subordination. And finally, the Debtor has not articulated any business or economic difference among these claims. *Cf. In re Rochem, Ltd.,* 58 B.R. 641, 642–44 (Bankr.D.N.J.1985) (holding that it was not "unfair discrimination" for plan proponent to classify separately and to treat differently a $35 million unliquidated and disputed tort claim when all other unsecured claims totalled only $171,-130).

■ The Debtor only asserts that the Zarlengas' claim is not "substantially similar" to the claims in Class 6 of the Modified Third Plan because the Zarlengas have a different motivation; the Zarlengas' attorney stated on the record that the Zarlengas will vote against any plan proposed by the Debtor because they do not agree with the Debtor's proposed solution to the noise problem that gave rise to their $40,000 pre-petition claim. R. of Jan. 28, 1994, at 30. Accordingly, the Debtor argues, the Zarlengas' claim should not be classified with the Class 6 claims, whose holders all favor the Debtor's reorganization.

■ The Court is not persuaded by the Debtor's argument. Different creditors will always have different motivations. The relevant issue is the similarity among the characteristics of the claims, not the motives of the holders of the claims. The way in which the holder of a particular claim is likely to vote is not a legitimate factor for a court to take into account when evaluating the issue of "substantial similarity." *See Route 37,* 987 F.2d at 161 ("Absent bad faith or illegality (*see* 11 U.S.C. § 1126(e) (1988)), the Code is not concerned with a claim holder's reason for voting one way or the other, and undoubtedly most claim holders vote in accordance with their overall economic interests as they see them.").

## IV. CONCLUSION

For the reasons discussed above, the Court finds that the Zarlengas' claim is "substantially similar" to the claims in Class 6 of the Debtor's Modified Third Plan. Under the "restrictive classification" standard adopted by the Court, the Zarlengas' claim cannot be separately classified. The Debtor's Modified Third Plan violates this standard; therefore, the Modified Third Plan is stricken. *See* § 1127(a) (providing that a plan proponent may not modify a plan in a way that violates § 1122). Under the classification scheme set forth in the Debtor's Third Plan, no impaired class has accepted the plan, so confirmation is denied. *See* § 1129(a)(10) (providing that a plan cannot be confirmed if all impaired classes reject it). Finally, the case is dismissed because it is apparent to the Court that, without the support of either Hancock or the Zarlengas, the Debtor is unable to effectuate a plan of reorganization. *See* § 1112(b)(2) (providing that a court may dismiss a case for "inability to effectuate a plan"). An appropriate order has been entered.