**In re Clyde Arthur WALTERS and Virginia Faye Walters, Debtors.**

**Bankruptcy No. 94–50160.**

United States Bankruptcy Court, W.D. Missouri.

Aug. 31, 1994.

Jere L. Loyd, Trustee, St. Joseph, MO.

Alden S. Lance, Savannah, MO, for debtors.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Chapter 7 trustee Jere L. Loyd (the "trustee") objects to the exemption claimed by debtors in the structured settlement payments Mr. Walters receives. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, the trustee's objection is SUSTAINED in part and DENIED in part.

### FACTUAL BACKGROUND

Debtor Clyde Arthur Walters was injured in 1980 when a grain elevator in which he was working exploded. The elevator was located on the property of the Pillsbury Company. Subsequently, debtors signed a Release and Settlement Agreement (the "Agreement") with Pillsbury Company and its insurance carrier, Employers Insurance of Wausau A Mutual Company (the "Wausau Insurance Company"). The Agreement provided that debtors would receive a lump sum payment of $130,000. Additionally, the Agreement provides for Mr. Walters to receive the following periodic lump sum payments as he reaches certain ages: (1) $15,000 at age forty-five; (2) $25,000 at age fifty; (3) $50,000 at age fifty-five; (4) $50,000 at age sixty; and (5) $25,000 at age sixty-five. The settlement also provides for the following monthly payments to be paid to debtors or their beneficiaries: (1) $1,200 per month until age forty-five; (2) $1,400 per month from age forty-five to age fifty; (3) $1,600 per month from age fifty to age fifty-five; (4) $1,800 per month from age fifty-five until age sixty. Beginning when Mr. Walters is sixty years old, debtors will receive $3,000 per month during the life of Mr. Walters, such payment to cease upon Mr. Walters' death. Wausau Insurance Company is directly responsible for the payments to debtors, and the Agreement required it to purchase an annuity through Wausau Life Insurance Company to guarantee said payments. Mr. Walters is now fifty-two years old and currently receives $1,600.00 per month from the Wausau Insurance Company. Debtors filed this

bankruptcy petition on April 22, 1994, seeking to discharge $16,682.75 in nonpriority unsecured debt.

Debtors exempted the structured settlement payments on their bankruptcy schedules. The trustee objects to said exemption.

## DISCUSSION

■ Section 522 of the Bankruptcy Code (the "Code") deals with exemptions and provides that a debtor may exempt property specified in section 522(d) unless state law provides otherwise. 11 U.S.C. § 522(b). Missouri law provides that:

> Every person by or against whom an order is sought for relief under Title 11, United States Code, shall be permitted to exempt from property of the estate any property that is exempt from attachment and execution under the law of the state of Missouri or under federal law, other than Title 11, United States Code, Section 522(d), and no such person is authorized to claim as exempt the property that is specified under Title 11, United States Code, Section 522(d).

Mo.Stat.Ann. § 513.427 (Supp.1994). Thus, the only issue in the case is whether structured settlement payments awarded for personal injury, the payments of said settlement being guaranteed by the purchase of an annuity, is exempt under Missouri law. Neither of the parties argue that the structured settlement payments are excluded from the bankruptcy estate. Debtors claim, rather, that the payments are exempt from attachment or execution because they represent debtor's right to receive a "disability, illness or unemployment benefit." Mo.Stat.Ann. § 513.430(10)(c) (Supp.1994). I find, initially, that the debtors' interest in this annuity is not the right to receive a disability benefit, but rather a right to receive payments under a contract on account of a disability. *See* Mo.Stat.Ann. § 513.430(10)(e). The distinction is important because the exemption in section 513.430(10)(c) is not limited to the extent reasonably necessary for the support of debtors or their dependents.[1] However, the structured settlement at issue here is a contract voluntarily negotiated by the parties following Mr. Walters' injury. *See* Trustee's Exh. # 1. Therefore, the payments Mr. Walters receives as a result of said contract are exempt only to the extent they are reasonably necessary for the support of Mr. Walters and his dependents pursuant to section 513.430(10)(e) of Missouri's Revised Statutes.

Mr. Walters testified, and his schedules reflect, that the only source of income for his family is $775.00 in Social Security benefits he receives each month and the $1,600.00 per month he is currently receiving from the Wausau Insurance Company annuity for a total monthly income of $2,375.00 per month. Debtors list their monthly expenses as $2,385.00.[2] Thus, the monthly payment of $1,600.00 which debtors receive is reasonably necessary for their support and is, therefore, exempt.

■ However, debtors' monthly income and expense schedules do not reflect the lump sum periodic payment of $50,000.00 to which Mr. Walters is entitled in three years. Nor do the schedules reflect the payment of $50,000.00 to which Mr. Walters is entitled at age sixty and the $25,000.00 to which Mr. Walters is entitled at age sixty-five. I must first decide if the remaining lump sum periodic payments are property of the bankruptcy estate. If so, then I must decide if such

---

1. Missouri law provides that, to the extent of a debtor's interest, the following property shall be exempt from attachment and execution:

 (e) Any payment under a stock bonus plan, pension plan, disability or death benefit plan, profit-sharing plan, nonpublic retirement plan or any similar plan described, defined, or established pursuant to section 456.072, RSMo, annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of such person and any dependent of such person.
Mo.Stat.Ann. § 513.430(10)(e) (Supp.1994).

2. I note that this Court has lifted the automatic stay to allow the creditor to repossess a 1991 Blazer. The schedule of monthly expenses totalling $2,385.00 reflects a payment of $450.00 per month on the 1991 Blazer. However, I am assuming debtors will need transportation and will purchase another automobile, thus incurring another monthly expense.

future payments are exempt from the claims of debtors' creditors.

■ Property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case." *In re Knight*, 164 B.R. 372, 374 (Bankr.S.D.Fla.1994); 11 U.S.C. § 541(a)(1). I have previously found that debtors' right to receive payments pursuant to the Agreement is a contractual right. As a contractual right it vested at the time the parties signed the Agreement. *In re Simon*, 170 B.R. 998, 1001 (Bankr.S.D.Ill. 1994). The nature of debtors' interest can be described as a present right to receive future payments. *Id. See* Trustee's Exh. # 1. The interest of the debtors in property as of the commencement of the case includes interests not subject to possession until some future time. *Knight* at 374. Therefore, I find that any future periodic lump-sum payments which debtors will receive as a result of the Agreement are property of the bankruptcy estate.

■ I must now decide whether the payments, which total $125,000.00 over thirteen years, are reasonably necessary for the support of Mr. Walters and his dependents.[3] Debtors monthly income is currently equal to debtors' expenses. That monthly income is guaranteed and will increase rather than decrease as long as Mr. Walters remains alive. Mr. Walters testified that he used the previous lump sum periodic payments to pay outstanding bills. He also stated that the $16,-682.75 in unsecured debt resulted from indiscriminate use of credit cards. But, he claims to have destroyed the credit cards, so the debts should not continue to increase. Debtors list $25,268.00 in secured debt. That sum includes an $18,003.00 debt on a 1991 S–10 Blazer. *See,* Schedule D—Creditors Holding Secured Claims. I have lifted the automatic stay at the request of the creditor who holds the secured claim on the 1991 S–10 Blazer, so I am assuming it has been repossessed, and is no longer a liability of debtors. Given these facts, I find that debtors have failed to demonstrate that the periodic lump sum payments they will receive in the future are reasonably necessary for the support of debtors or their dependents. As such, the future payments are not exempt from the claims of debtors' creditors.

■ Debtors point out the Agreement has an anti-alienation provision which states:

> Neither Clyde Walters, his estate, or any subsequent beneficiary or recipient shall have the right to transfer, assign, anticipate, mortgage or otherwise encumber and advance any payment, or any part of any payment, due under this agreement.

Trustee's Exh. # 1, ¶ 4. Such a provision is relevant if debtors are claiming the structured settlement payments are excluded from the bankruptcy estate pursuant to section 541(c)(2). *See Drewes v. Schonteich (In re Schonteich)*, 31 F.3d 674 (8th Cir.1994). Section 541 excludes from property of the estate the beneficial interest of the debtor in a *trust* which is enforceable under state law and contains a restriction upon the transfer of debtor's beneficial interest. 11 U.S.C. § 541(c)(2) (emphasis added). Such trusts are commonly known as spendthrift trusts and are enforceable in Missouri. *Riske v. Gaylord Container Corp. (In re Brown)*, 130 B.R. 304, 308 (Bankr.E.D.Mo.1991). Mo. Stat.Ann. § 456.080(2). A spendthrift trust cannot be enforced in Missouri, however, if: (1) the settlor of the trust is also the beneficiary of the trust; (2) the beneficiary has dominion or control over the trust; (3) the beneficiary may revoke the trust; or (4) the beneficiary has powers in the trust. *Id.* (citations omitted). In order to form a spendthrift trust there must be a designated trustee, a designated beneficiary, and a definite trust res. *Schonteich*, at 677. In *Schonteich*, Linda Schonteich was a live-in companion and caretaker to Joseph Bloom. Bloom and two hospitals agreed that Bloom would give the hospitals cash and stock, and the hospitals would pay Linda Schonteich a monthly stipend for as long as she lived. *Id.* The agreement provided that the monthly payments were expressly nonassignable and terminated at the beneficiary's death. *Id.*

---

**3.** I note that if the trustee's objection is sustained, and such payments are an asset of the estate, any amounts remaining after payment of all claims, and expenses of administration, would be returned to debtors. 11 U.S.C. § 726.

In holding the nonalienation provision created a spendthrift trust, the Eighth Circuit found that the beneficiary contributed nothing to the trust and had no control over the corpus of the trust. *Id.* at 677–78.

 *Schonteich* is distinguishable from this case in that Mr. Walters was not a passive third party in the Agreement at issue here. The Agreement was between the debtors themselves and Pillsbury Company. Mr. Walters gave up any future claim he might have against Pillsbury Company in exchange for the structured settlement payments. There was consideration on both sides of the Agreement unlike the situation in *Schonteich* where the donor reached an agreement with a third party to provide for the donee. Further, a trust is defined as "a right of property, real or personal, held by one party for the benefit of another." *Black's Law Dictionary* 1352 (15th ed. 1979). There must be a manifestation of intent to create the trust resulting in a fiduciary relationship between the trustee and the beneficiary. *Id.* The Agreement between debtor and the Wausau Insurance Company has none of the characteristics of a trust, nor is there any evidence the parties intended to establish a trust. "The courts will not simply assume that an annuity is a trust in the absence of evidence that the parties had the specific intent to create a trust...." *In re Simon,* 170 B.R. 998 (Bankr.S.D.Ill.1994) (quoting *Walro v. Striegel (In re Striegel),* 131 B.R. 697, 701 (S.D.Ind.1991)). The court in *Streigel* found that "a debtor's discretion in choosing to receive payments through an annuity as a means of settling a lawsuit 'suggests that [the debtor] could be viewed as the settlor of any purported trust.'" *Id.* (quoting *In re Riley,* 91 B.R. 389, 391 (Bankr.E.D.Va.1988)). In order for a spendthrift trust to be enforceable under Missouri law, the settlor of the trust cannot also be a beneficiary under the trust. *Brown,* 130 B.R. at 308. Therefore, I find that in this case all the indicia of trust are absent. The parties never used the word trust in the agreement, no one is designated as a trustee, and there is no identifiable trust res because the Wausau Insurance Company is the owner of the annuity. Further, Mr. Walters contributed to the Agreement by waiving any future claims he might have against Pillsbury Company and its insurer. Even if I found the spendthrift provision in the Agreement created a spendthrift trust, said spendthrift trust would be unenforceable in Missouri because the settlor of the trust is also the beneficiary. *Id.* Lastly, I find that Congress did not intend section 541(c)(2) to allow debtors to contractually exclude property from the bankruptcy estate by negotiating a nonalienation clause in an agreement and later attempting to recharacterize the contract as a trust.

For all of the above reasons, the trustee's objection to the exemption of debtors' structured settlement payments is sustained in part and denied in part.

An Order in accordance with this Memorandum Opinion will be entered this date.