**In re LOCAL UNION 722 INTERNA-
TIONAL BROTHERHOOD OF
TEAMSTERS, Debtor.**

**No. 09 B 20825.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 6, 2009.

Chester H. Foster Jr. and Justin B. Foster of Foster, Kallen & Smith, Homewood, IL, for the Debtor.

Bruce C. Scalambrino and Christopher L. Muniz of Scalambrino & Arnoff, Chicago, IL, for Mark Serafinn.

## MEMORANDUM OPINION

JACQUELINE P. COX, Bankruptcy Judge.

In this matter, a creditor, Mark Serafinn ("Serafinn"), moves to dismiss the bankruptcy case of the debtor, Local Union 722 International Brotherhood of Teamsters ("Debtor"), pursuant to 11 U.S.C. § 1112(b). After briefing and a hearing on the matter, the motion is granted for the following reasons.

## I. JURISDICTION

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B), and (O).

## II. BACKGROUND

The dispute between the Debtor and Serafinn has an acrimonious history. The Debtor is a local unit of the International Brotherhood of Teamsters union with approximately 1,340 members who contributed approximately $880,000.00 in dues and fees to the Debtor in 2008. The Debtor owns a parcel of real property in LaSalle, Illinois; its estimated value is approximately $350,000.00. Hometown National Bank ("Bank") holds a security interest in this property pursuant to a promissory note in the amount of $200,000.00. The note is secured by a mortgage and assignment of rents in the property. According to the Debtor's schedules, it owes roughly $130,000.00–$140,000.00 on this obligation to the Bank.

Serafinn is the former president of the Debtor. On December 30, 2003, Serafinn initiated suit against the Debtor for alleged violations of the Labor Management Reporting and Disclosure Act of 1959 ("Labor Action") in the District Court for the Northern District of Illinois. Following a trial, a jury awarded Serafinn $286,000.30 on November 14, 2006. On January 12, 2007, after receiving the adverse verdict, the Debtor entered into a $200,000.00 line of credit with the Bank. The stated purpose of the line of credit was to "PROVIDE AN OPERATING LINE OF CREDIT TO COVER LEGAL EXPENSES." (Mem. of Law in Support of Mot. to Dismiss, Case No 1:09–bk–20825, Dkt. No. 48, Ex. D)(emphasis in original). In January 2008, the Debtor borrowed an additional $200,000.00 from the Bank with the purpose "TO TERM OUT EXISTING LOC." (Reply Mem. of Law in Support of Mot. to Dismiss, Case No. 1:09–bk–20825, Dkt. No. 71, Ex. C) (emphasis in original). A final judgment was entered on April 17, 2009 in Serafinn's favor. The Debtor has appealed that judgment to the Seventh Circuit Court of Appeals.

In order to collect on the judgment, Serafinn recorded a *lis pendens* with the LaSalle County Recorder's Office in April 2007 against the Debtor's real property. In response to the *lis pendens* against its real property, the Debtor filed a lawsuit in state court in LaSalle County, Illinois against Serafinn and his counsel alleging

that the *lis pendens* was false and fraudulent and clouded its title on the property ("*Lis Pendens* Action"). The Debtor is seeking compensatory and punitive damages.

On June 3, 2009, Serafinn served a citation to discover assets upon the Bank. At the time, the Debtor had approximately $69,000.00 in its two accounts at the Bank which the Debtor states represents its operating funds. The Bank then exercised its set-off rights pursuant to its promissory note with the Debtor and froze $67,000.00 of the Debtor's assets in the accounts. The Debtor states that the Bank agreed to refrain from exercising its rights until June 8, 2009 to provide the Debtor with an opportunity to quash the citation. On June 5, 2009, the Debtor filed an emergency motion to quash the citation. This motion was granted in part to pay certain payroll and vendor checks. On June 8, 2009, the Debtor's motion to quash the citation was denied. The Debtor filed the underlying chapter 11 petition for bankruptcy relief immediately after the motion was denied on June 8, 2009.

The Debtor listed $1,465,948.28, later amended to 1,596.948.28, in unsecured claims on its schedules. A large portion of these claims is the claim of Central States Health & Welfare ("Central States"), a multiemployer pension plan, which filed a contingent claim for $1,231,138.63. The next biggest claim is Serafinn's judgement of $286,000.30; it is listed as disputed. The third largest claim is for $26,000.00 held by Cavanagh & O'Hara ("Cavanagh"), the Debtor's counsel in the Labor Action. The remaining claims are related mostly to the Debtor's day-to-day operations and unpaid accrued employee vacation time.

## III. DISCUSSION

Serafinn seeks to dismiss the Debtor's bankruptcy case for cause under 11 U.S.C. § 1112(b). He argues that the Debtor filed for bankruptcy in bad faith. The Debtor resists Serafinn's efforts.

A bankruptcy court possesses broad discretion to dismiss a chapter 11 bankruptcy case for cause under § 1112(b). *Matter of Woodbrook Associates*, 19 F.3d 312, 316 (7th Cir.1994). Further, a chapter 11 case can be dismissed at any time. *Id.* at 317. "Creditors need not wait until a debtor proposes a plan or until the debtor's exclusive right to file a plan has expired." *Id.* Likewise, they do not need to "incur the added time and expense of a confirmation hearing on a plan they believe cannot be effectuated." *Id.* "The very purpose of § 1112(b) is to cut short this plan and confirmation process where it is pointless." *Id.*

Although not specifically provided for under § 1112(b), good faith is recognized as a prerequisite to filing a bankruptcy case under chapter 11 of the Bankruptcy Code. *In re Dilling*, 322 B.R. 353, 360 (Bankr.N.D.Ill.2005) (citing *In re Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir.1984)). The movant bears the burden of proving by a preponderance of the evidence that a chapter 11 debtor filed a bankruptcy case in bad faith. *Id.* "... [D]enial of access to bankruptcy relief at the initial stages of the proceeding are inherently drastic and should not be employed as an easy alternative to other post-petition creditor remedies." *Id.* (quoting *In re Fox*, 232 B.R. 229, 237 (Bankr.D.Kan.1999)). A determination of bad faith in filing a bankruptcy case is made by considering the totality of the circumstances by examining both objective and subjective factors. *In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 750 (Bankr.N.D.Ill.2004).

### A. Is the Bankruptcy Case Really a Two–Party Dispute?

Serafinn first argues that the Debtor's bankruptcy case is in essence a

two-party dispute between himself and the Debtor. One factor indicating a bad faith filing is whether the bankruptcy case was primarily filed to confer federal jurisdiction on what would otherwise be a two-party dispute involving issues of state law. *In re Liptak,* 304 B.R. 820, 832 (Bankr. N.D.Ill.2004); *In re Paolini,* 312 B.R. 295, 307 (Bankr.E.D.Va.2004). Bad faith is not found solely because the debtor has one or a small body of creditors since filing a chapter 11 case after falling on the wrong side of a judgment is not uncommon. *See Dilling,* 322 B.R. at 362 (citing *In re Texaco, Inc.,* 254 B.R. 536, 541 (Bankr.S.D.N.Y. 2000), where a debtor filed for chapter 11 bankruptcy solely to compromise a $10.5 billion judgment). However, there must be a realistic intention of financial rehabilitation. *In re Schlangen,* 91 B.R. 834, 837 (Bankr.N.D.Ill.1988); *In re 698 Flushing Realty Corp.,* 335 B.R. 17, 19–20 (Bankr. E.D.N.Y.2005).

■ Serafinn points to several facts to support his argument that the underlying bankruptcy case is a two-party dispute with no realistic chance of rehabilitation of the Debtor. First, he points to an email dated June 4, 2009, after Serafinn served the citation to discover assets upon the Bank, to his attorney in the Labor Action stating that serving the citation "has placed the [Debtor] in a very precarious financial position such that their only remedy may be to seek protections under the bankruptcy code[.]" (Mem. of Law in Support of Mot. to Dismiss, Case No 1:09–bk–20825, Dkt No. 48, Ex. A). Citation to this email has no bearing on whether this is really a two-party dispute. Large judgments are a common reason for filing for chapter 11 bankruptcy protection. *See Dilling,* 322 B.R. at 362 ("Indeed, filing a chapter 11 case because of one large judgment is not at all unusual."). The Debtor claims its operating assets were frozen as a result of the citation against it. The

email does not support an indication of bad faith in the bankruptcy filing.

■ Additionally, the Debtor alleges that Serafinn acted with bad faith. The Debtor points out that Serafinn took the position that the automatic stay, when the *Debtor* filed for bankruptcy, prevented it from prosecuting its appeal of the Labor Action and attempted to have the stay enforced against the Debtor. Additionally, the Debtor cites Serafinn's filing of the *Lis Pendens* Action as another sign of bad faith. Finally, the Debtor points to Serafinn's efforts in objecting to Debtor's motion to retain Cavanagh as special counsel to proceed with the *Lis Pendens* Action. To support its last contention, the Debtor submits two emails that Serafinn's counsel sent to Mr. O'Hara of Cavanagh indicating that Cavanagh should cease its representation of the Debtor in the *Lis Pendens* Action until this Court ruled on the motion to retain Cavanagh. The Debtor proffers that these emails were sent in an attempt to frighten Mr. O'Hara from representing the Debtor in the *Lis Pendens* Action. These actions do not clearly indicate bad faith. Instead, they appear to be litigation tactics, some that involve an action in a different court. Lawyers are specially trained to ascertain the veracity and validity of such claims. The Court makes no comment on these tactics and does not find these acts to be indicative of bad faith on Serafinn's part.

■ Serafinn also points out that the claims listed on the Debtor's bankruptcy schedules help prove that this is really a two-party dispute. According to Serafinn, his claim in proportion to the others indicates this. The Debtor's schedules initially indicated $1,465.948.28 in unsecured claims. The Debtor later amended its schedules to include a total of over forty creditors with claims in the amount of $1,596,422.96. Most of the additional cred-

itors have claims that are *de minimus* in value and relate to the Debtor's day-to-day operations. While not dispositive, the number of creditors and the amount of claims they hold is a relevant consideration in determining whether the bankruptcy is really a two-party dispute. *Liptak,* 304 B.R. at 832; *see also Matter of Little Creek Dev. Co.,* 779 F.2d 1068, 1073 (5th Cir.1986). Serafinn alleges that the schedules were amended in bad faith in an attempt to make the creditor body appear larger. Serafinn also argues that the other two largest unsecured claims should not be included in the analysis and that their omission indicates a two-party dispute.

■■■ The largest claim is held by Central States, a multiemployer pension plan. This claim, for a total of $1,231,138.63, is listed as contingent, and will not become an actual claim until the Debtor either withdraws from the multiemployer pension plan or ceases operations, incurring withdrawal liability under the Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. § 1383(a); *GCIU–Employer Ret. Fund v. The Goldfarb Corp.,* 565 F.3d 1018, 1024 (7th Cir. 2009). Moreover, filing for bankruptcy protection does not amount to a "repudiation of obligations or a cessation of operations" to trigger withdrawal liability. *Cent. States, Se. and Sw. Areas Pension Fund v. Basic Am. Indust., Inc.,* 252 F.3d 911, 917 (7th Cir.2001). There is no evidence that the Debtor intends to incur this liability. Nowhere does it indicate that it will either cease operations or withdraw from the plan, giving Central States a claim. In fact, inclusion of this amount as a claim in the two-party analysis seems to support either conversion to a chapter 7 bankruptcy case or dismissal as inclusion of this claim would make it more difficult for the Debtor to reorganize and success-

fully rehabilitate financially under chapter 11.[1] Without this claim, the Debtor's unsecured claims total $365,284.33.

Serafinn also argues that the next largest creditor, besides itself, is Cavanagh, the Debtor's counsel in the Labor Action and *Lis Penden* Action, for $26,000.00 and should be disregarded in the two-party analysis because it belongs to its attorney as part of a dispute between the two parties. To support his proposition, Serafinn cites this Court's decision in *Liptak.* In *Liptak,* the Court made a determination that legal fees incurred during years of litigation between the debtor and the main creditor weighed in favor of a finding of a two-party dispute between the debtor and that creditor. *Liptak,* 304 B.R. at 831–32. However, in *Liptak,* it was not disputed that the claim was related to the litigation between the debtor and the creditor. *See id.* at 831. In this case, the Debtor argues that Cavanagh has provided legal counsel to it for years and on matters unrelated to the Labor Action. Serafinn does not provide evidence to dispute this. These circumstances do not indicate that the Cavanagh claim should weigh in favor of dismissal.

Even with the inclusion of the Cavanagh claim with the body of the other unsecured claims, Serafinn's claim controls a high proportion in regard to the other claims. Out of the $365,284.33 absent Central States' claim, Serafinn's $286,000.30 claim represents roughly 78% of the Debtor's unsecured debt. This factor favors finding that the underlying chapter 11 bankruptcy case is really a two-party dispute.

*B. Was the Underlying Bankruptcy Necessary?*

■■■ Serafinn next argues that the bankruptcy case need not have been filed.

---

1. The Court notes that the movant seeks dismissal under 11 U.S.C. § 1 112(b) and does not ask to convert the case to a case under chapter 7 of the Bankruptcy Code.

Another circumstance relevant to whether a bankruptcy case was filed in good faith is whether the filing was necessary. *In re N.R. Guaranteed Ret., Inc.*, 112 B.R. 263, 272 (Bankr.N.D.Ill.1990). As Judge Wedoff stated:

> The most basic "good faith" ground for dismissal of a Chapter 11 case is that the filing is unnecessary. A truly unnecessary Chapter 11 case imposes improper burdens both on creditors and on the bankruptcy system. The creditors are arbitrarily required to accept rights in bankruptcy in place of their property rights under non-bankruptcy law (at the very least, the automatic stay is imposed upon them), and the bankruptcy system is required to waste its resources, possibly interfering with the processes of other court systems.

*Id.*

An indication that a bankruptcy is not necessary is "if the debtor's business could continue unimpaired, without a bankruptcy filing," otherwise "a creditor whose rights are impacted by the filing has 'cause' for relief, independent of the other factors listed in the decisions on good faith in filing." *Id.* at 273. Generally, a particular financial hardship is not necessary to support a voluntary filing. *Id.* Section 1112(b) does not require a debtor to "clearly articulate or convincingly prove its need for bankruptcy protection." *Id.* It is presumed that debtors file cases under chapter 11 because their need for relief is genuine. *Id.* Insolvency is not a requirement for filing a bankruptcy case under any chapter. *In re Int'l Oriental Rug Ctr.*, 165 B.R. 436, 442 (Bankr.N.D.Ill. 1994). However, solvency is relevant in determining whether a debtor has filed in good faith because of the genuine need to preserve the on-going concern value of a business. *See Liptak*, 304 B.R. at 832.

Serafinn makes several arguments as to why the Debtor's bankruptcy case was unnecessarily filed. He notes that the Debtor continues to collect dues from its members, which is its primary source of income, was current on its obligations to the Bank prior to the set-off of the Debtor's accounts, and has the ability to satisfy its dispute with Serafinn. Serafinn's contention centers on the fact that the Debtor took out a $200,000.00 line of credit from the Bank in order to continue its litigation against Serafinn in January 2007. Instead, Serafinn argues that the Debtor could have used these funds to negotiate a settlement and resolve his dispute. Moreover, Serafinn also argues that the Debtor could use equity in its real property to obtain a loan to satisfy the judgment. Serafinn argues that the only purpose of the bankruptcy filing was to thwart its nonbankruptcy collection rights.

In response, the Debtor states that it took out the line of credit for a multitude of reasons. It concedes that it did use the line of credit to pay legal expenses, but the loan proceeds were also used to pay general operating expenses. The Debtor also stated that it was involved with numerous settlement negotiations with Serafinn but found Serafinn's terms to be unacceptable. The Debtor alleges that Serafinn would only accept that the Debtor forgo its appeal rights, drop the *Lis Pendens* Action, and satisfy 100% of Serafinn's judgment. Additionally, the Debtor believes that it will prevail in its appeal of the Labor Action and in the *Lis Pendens* Action. The Debtor also disputes that it could utilize equity in its real property to satisfy a judgment because its title is clouded by the *lis pendens* filed by Serafinn. Lastly, the Debtor argues its bankruptcy was necessary because its operating funds were set-off after the citation to discover assets was served upon the Bank.

Once again, Serafinn relies upon this Court's decision in *Liptak* to bolster his

position. In *Liptak*, the Court relied on *N.R. Guaranteed*, which said:

> [A] Chapter 11 filing is in good faith and may be used to replace an appeal bond if the judgment against the debtor is so large that the debtor faces severe disruption of his business if enforcement of the judgment is not stayed. However, if the debtor has the ability to satisfy the judgment from non-business assets, then it is bad faith to attempt to use the bankruptcy laws to appeal without posting a bond ... The timing of any bankruptcy filing may be relevant to determining whether the debtor acted to delay creditors unnecessarily ..., but there is nothing improper in a debtor's thwarting state court collection proceedings by filing a Chapter 11 petition, as long as reorganization is both needed and feasible.

*Liptak*, 304 B.R. at 830 (quoting *N.R. Guaranteed*, 112 B.R. at 272–73 & n. 7 (quoting *In re Holm*, 75 B.R. 86, 87 (Bankr.N.D.Cal.1987))) (internal citations and quotations omitted). The Court then stated:

> The test is whether the debtor has a business justification for thwarting a judgment creditor's collection activity and forcing them to accept other (possibly reduced) future payment rights under a reorganization plan in lieu of assets crucial to operating the business. This justification does not exist if the debtor could have satisfied a judgment with funds and savings that were not being used to operate a business.

*Id.*

It is Serafinn's position that the Debtor failed the test stated above since it took out a line of credit to continue in its efforts to litigate with Serafinn.

*Liptak* presents facts different from those in this case. In *Liptak*, the Court specifically found that the debtor had funds aside from those he used to run his business. *Id.* at 833. The Court stated, "*No evidence* suggests that the $2 million Thornhill seeks to collect is absolutely necessary for Liptak to provide business turnaround advice to potential clients or that he uses his own funds to rehabilitate companies." *Id.* (emphasis added). In the instant case, the Debtor states that the bankruptcy filing became necessary when its operating funds were frozen by the Bank after Serafinn issued the citation to discover assets. Serafinn does not produce any evidence that the Debtor currently has funds other than those held with the Bank that it may use for its day-to-day operations. The fact that the Debtor incurred debt two years prepetition to continue its litigation instead of satisfying Serafinn's judgment may not have been in the Debtor's best interests looking backward. Hindsight and the Court's judgment cannot be substituted for the Debtor's business judgment at that time. As stated in *N.R. Guaranteed*, "... there is nothing improper in a debtor's thwarting state court collection proceedings by filing a Chapter 11 petition, as long as reorganization is both needed and feasible." *N.R. Guaranteed*, 112 B.R. at 273, n. 7. Even if the Debtor's purpose in filing the bankruptcy case was to prevent Serafinn from exercising his nonbankruptcy collection rights, absent proof by a preponderance of the evidence that reorganization is not feasible, *see Liptak*, 304 B.R. at 827, the Debtor is well within its rights and its bankruptcy filing is not deemed unnecessary.

### C. *Is it Possible for the Debtor to Formulate a Confirmable Plan of Reorganization?*

Serafinn also argues that the Debtor cannot propose a confirmable plan over Serafinn's objection because Serafinn's claim dominates the class of unsecured nonpriority claims, likely the only

impaired class under a plan the Debtor would propose. Relief may be granted under § 1112(b) if debtor can not effectuate a reorganization plan. *N.R. Guaranteed,* 112 B.R. at 276. One factor indicative of bad faith is that the debtor has "no available sources of income to sustain a plan of reorganization." *Id.* (quoting *Little Creek,* 779 F.2d at 1073). It is the moving party's burden to establish the debtor's inability to formulate or execute a plan. *Id.*

The Debtor argues that it can confirm a plan despite an objection by Serafinn. It claims that Serafinn's claim would be placed into a separate class of impaired claims because it is a contingent claim. This is a so-called "cramdown" of chapter 11 plan whereby a plan is confirmed over the objection of creditors so long as "at least one class of impaired creditors approve the plan and that the plan satisfy the absolute priority rule, which precludes the payment of junior claims as long as senior claims remain unsatisfied." *Matter of Wabash Valley Power Ass'n, Inc.,* 72 F.3d 1305, 1313 (7th Cir.1995). An impaired creditor class is a class whose claims are not unimpaired; unimpaired claims are those claims who are paid in full and in accordance with their original terms, including the cure of any defaults. 11 U.S.C. § 1124.

■ An inherent issue in classifying unsecured claims into different classes is the danger of gerrymandering, an almost certain objection should the Debtor's plan place Serafinn's claim in a separate class of claims than those of the other unsecured creditors. "Every plan proponent creates its classification scheme with the goal of maximizing the probability that its plan will be confirmed." *In re Sentinel Mgmt. Group, Inc.,* 398 B.R. 281, 296 (Bankr. N.D.Ill.2008) (quoting *In re Bloomingdale Partners,* 170 B.R. 984, 996 (Bankr.N.D.Ill. 1994)). The plan proponent enjoys a wide latitude of discretion in classifying claims. *Id.* This discretion is not without limits, a debtor "possesses considerable, but not complete discretion to classify claims and interests in its Chapter 11 plan of reorganization." *Id.* (quoting *Woodbrook Assocs.,* 19 F.3d at 317) Section 1122(a) of the Bankruptcy Code states "a plan may place a claim or an interest in a particular class only if such a claim or interest is substantially similar to the other claims or interests in such class." 11 U.S.C. § 1122(a). Section 1122(a) does not, in its own terms, prohibit separating claims. *See Sentinel,* 398 B.R. at 296. It only requires that dissimilar claims cannot be placed in the same class. *Id.* at 296–97.

Section 1122(a) provides little guidance as to how claims should be classified. The Seventh Circuit Court of Appeals has weighed in on the issue:

> A debtor in bankruptcy has considerable discretion to classify claims and interests in a chapter 11 reorganization plan. While a debtor may not separately classify claims solely in order to "gerrymander an affirmative vote on reorganization," claims may be classified separately if "significant disparities exist between the legal rights of the holder[s of the different claims] which render the two claims not substantially similar." Claims may also be separately classified if there are "good business reasons" to do so or if the claimants have sufficiently different interests in the plan.

*Wabash Valley Power,* 72 F.3d at 1321 (quoting *Woodbrook Assocs.,* 19 F.3d at 318) (brackets in original).

The Seventh Circuit noted that a danger of gerrymandering exists when classifying similar claims differently to ensure that a proper vote is secured to obtain confirmation of a plan. The Circuit stated "[s]ome limits are necessary to offset a debtor's incentive to manipulate a classification

scheme and ensure the affirmative vote of at least one impaired class[.]" *Woodbrook Assocs.*, 19 F.3d at 317. Gerrymandering in the classification of claims in a chapter 11 plan of reorganization "is to create classes of claims in an artificial way with the purpose of ensuring that the plan will be confirmed." *Bloomingdale Partners*, 170 B.R. at 995. The Court of Appeals stopped short of defining limits to diminish gerrymandering and left that decision to the bankruptcy courts, stating "that this is one of those areas of the law in which it is not possible to do better than to instruct the first-line decision maker, the bankruptcy judge, to seek the result that is reasonable in light of the purposes of the relevant law ..." *In re Crawford*, 324 F.3d 539, 542 (7th Cir.2003).

Whether a claim should be included within the same class is dependent on whether the claims are "substantially similar." *Sentinel*, 398 B.R. at 296. The determination is made by examining the nature of the claim or its legal attributes and not by focusing on the status or circumstances of the claimant. *Id.* Separate classification is proper where it can be demonstrated that the claims may have different legal rights, bankruptcy priorities or business reasons pertinent to a successful reorganization of the debtor. *Bloomingdale Partners*, 170 B.R. at 997.

The Debtor argues that Serafinn's claim must be separately classified from the other unsecured claims since it is a contingent claim and that it is contingent because it is based on a judgment that is currently being appealed. According to the Debtor, the plan could be confirmed as long as the class of unsecured claims not including Serafinn's claim votes to accept the plan. The Seventh Circuit Court of Appeals rejected essentially the same ar-

gument the Debtor tries to raise here. In *Knight*, a chapter 13 debtor argued that "a debt becomes noncontingent only when a triggering event (such as the entry of final judgment) occurs to make the claim immediately due." *In re Knight*, 55 F.3d 231, 236 (7th Cir.1995). The Circuit stated that a debt is a noncontingent claim "as long as all the events that gave rise to the debtor's liability had occurred prior to the filing of the bankruptcy petition." *Id.* Moreover, "the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises." *Id.* (quoting *In re McGovern*, 122 B.R. 712, 715 (Bankr.N.D.Ind.1989)). In the case at bar, all the events giving rise to Serafinn's claim, *i.e.*, entry of judgment against the Debtor in Serafinn's favor, occurred before the Debtor filed its bankruptcy petition and its subsequent appeal does not render it contingent. Therefore, contingency does not serve as a basis to separate Serafinn's claim from the other unsecured claims.[2] The Court agrees with Serafinn that the Debtor's only reason for separately classifying his claim from the other unsecured claims would be to produce a separate class of creditors that would vote to accept its plan, constituting an improper gerrymandering of votes. It would be impossible for the Debtor to confirm a plan over Serafinn's objection since it holds over two-thirds in amount of claims as a whole, unless his claim remained unimpaired. *See* 11 U.S.C. § 1126(c). Therefore, dismissal of the Debtor's chapter 11 case is warranted since it cannot in good faith propose a plan overcoming this obstacle.

## IV. CONCLUSION

Based on the foregoing, Serafinn's motion to dismiss the Debtor's chapter 11

**2.** Moreover, the fact this claim is disputed would not constitute a valid reason for segregating it from other unsecured claims. *See In*

*re Orla Enterprises*, 2009 WL 2447607, *3 (Bankr.N.D.Ill. Aug.10, 2009).

case pursuant to 11 U.S.C. § 1112(b) is GRANTED. The bankruptcy case is DISMISSED.